750 N.W.2d 335 (2008)
275 Neb. 921
Alan Dean JENSEN, appellee,
v.
Kathleen A. JENSEN, now known as Kathleen A. Kerrigan, appellant.
No. S-07-728.
Supreme Court of Nebraska.
June 13, 2008.
*338 Stephanie Weber Milone, Omaha, for appellant.
Donald A. Roberts, of Lustgarten & Roberts, P.C., L.L.O., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*339 GERRARD, J.
The parties to this appeal entered into an agreement, incorporated into a court order, by which the father of a minor child agreed to pay the mother $14,000. If the mother ever sought and received child support, however, the order provided that the father was to receive $14,000 credit against the child support award. The primary issue presented in this appeal is whether such a provision is enforceable. We conclude that on the facts of this case, the agreement is enforceable, and we affirm the judgment of the district court.

BACKGROUND
Alan Dean Jensen and Kathleen A. Jensen, now known as Kathleen A. Kerrigan, are the parents of a minor child whose paternity was adjudicated in a decree entered on December 29, 1999. That decree established joint legal and physical custody, and because Alan and Kathleen were living together at the time, no child support was awarded.
The decree of paternity was modified on March 14, 2000. The modification established a schedule for the parties' physical custody of the child. The 2000 modification did not order ongoing child support, but provided that
[Alan] has delivered to [Kathleen], the sum of $14,000.00, which amount is considered toward any future child support that [Kathleen] may request from the Court. In the event [Kathleen] does request child support in the future, the $14,000.00 shall be used toward the payment of that child support each month, before [Alan] shall be required to make any actual payments to the Court. In the event [Kathleen] never requests child support during the minority of the child, she shall not be required to repay or credit this money to [Alan].
Alan testified that the $14,000 payment had been made at Kathleen's request. Alan explained that Kathleen "didn't want to get an apartment. She wanted [the child] to have a house with a backyard. And I told her that I would help her in that regard in as much as that would provide shelter for my son." Kathleen conceded that she received the $14,000 payment and used it to make a downpayment on a house.
On January 12, 2001, Kathleen filed an application for another modification of the decree. Kathleen alleged that the joint custody arrangement was not working and prayed that she be awarded sole custody. Alan cross-petitioned for custody and child support. The parties then, through mediation, entered into a "parenting plan" reestablishing a schedule for joint custody. The parenting plan was not memorialized by the court at that time, nor was the decree modified.
On October 14, 2003, Alan petitioned to modify the decree, alleging, for a number of reasons, that circumstances had changed since the parenting plan and previous court orders and that he should be awarded sole custody and child support. On November 19, the court modified the decree to reflect the previous parenting plan. On November 21, Kathleen cross-petitioned for sole custody and child support.
The case was not tried until September and October 2005. On March 7, 2006, the court entered an order modifying the decree, awarding Kathleen sole custody, and establishing a visitation schedule. The court ordered Alan to pay child support "in the amount of $1,100 per month commencing the first month after the signing and entry of this Order and continuing until the minor child reaches majority, marries, is emancipated, dies, or until further order of the Court." The order did not address *340 a credit against the child support award, and there is no indication in the record that Alan raised the issue of a credit at that time. Alan appealed from the March 7 order, assigning error only to the district court's failure to award him sole custody. In a memorandum opinion filed December 12, the Court of Appeals affirmed the district court's custody award.
On March 29, 2007, Alan filed a declaratory judgment action in the district court, seeking a declaration with respect to the $14,000 credit provision of the March 14, 2000, order. In response, Kathleen alleged that the credit provision was (1) void as a conditional order, (2) void as against public policy, (3) void as impermissibly contracting away the right of the child to receive child support, and (4) barred by res judicata. Kathleen also alleged that the $14,000 payment "has been expended in maintaining and supporting the parties' minor child" and that she was unable to return it. At trial, Kathleen testified that she had cut back her work hours, "because I thought I was going to have this money coming in. And now that it's not in, we're struggling."
The district court rejected each of Kathleen's arguments. The court reasoned that the credit provision had not bargained away the right to receive child support, but was in effect a negotiated settlement provision in which Alan had agreed to pay a sum of money that was to be used in supporting the child. The court concluded that the March 14, 2000, order was valid and enforceable, and declared that Alan was entitled to a credit of $14,000 to be applied to the March 7, 2006, child support award.

ASSIGNMENTS OF ERROR
Kathleen assigns that the district court erred in declaring the $14,000 credit provision enforceable and in granting Alan such credit against his child support obligation.

STANDARD OF REVIEW
This appeal presents questions of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[1]

ANALYSIS
Kathleen offers three arguments in support of her assignments of error: that the credit provision was a void conditional order, that it is unenforceable as against public policy, and that Alan's enforcement of the provision is barred by res judicata. We will address each argument in turn.

CONDITIONAL ORDER
Kathleen argues that the credit provision is a void conditional judgment. Orders purporting to be final judgments, but that are dependent upon the occurrence of uncertain future events, do not necessarily operate as "judgments" and may be wholly ineffective and void as such.[2] We have explained that a conditional judgment may be wholly void because it does not "perform in praesenti" and leaves to speculation and conjecture what its final effect may be.[3]
But we have also explained that while conditional orders will not automatically become final judgments upon the occurrence of the specified conditions, they *341 can operate in conjunction with a further consideration of the court as to whether the conditions have been met, at which time a final judgment may be made.[4] And more importantly, we held in Strunk v. Chromy-Strunk that the void conditional judgment rule does not extend to actions in equity.[5] Conditional judgments are a fundamental tool with which courts sitting in equity have traditionally been privileged to properly devise a remedy to meet the situation. Therefore, where it is necessary and equitable to do so, a court of equitable jurisdiction may enter a conditional judgment and such judgment will not be deemed void simply by virtue of its conditional nature.[6]
Instead, certain conditional judgments may be considered erroneous or an abuse of discretion, be set aside where procured by fraud, or be considered void as contrary to statute or public policy.[7] There is no evidence of fraud in this case, and we will consider public policy more completely in the context of Kathleen's next argument. We have also said that where a property division is made pursuant to a voluntary agreement by the parties, a further equitable consideration arises as to the need to protect the parties' bargaining power and the benefit of a bargain once made.[8] Where parties have forgone their opportunity to litigate disputes and have chosen instead to enter into an agreement, their reliance on the agreement may be presumed. Inequity may result if the court adopts a policy of less than full enforcement of mutually agreed-upon property and support agreements.[9] That would be the case here. We note, in particular, that although Kathleen argues the March 14, 2000, order was void, she has made no offer to return the $14,000 payment she received as a result of the order.
The credit provision at issue here was the product of negotiation and agreement by the parties, and was incorporated by the court into what was implicitly a fair and reasonable modification of the paternity decree. Even assuming it was subject to collateral attack, it was not so indefinite as to be unenforceable. And the evidence suggests that the provision was an appropriate exercise of the court's equitable powers, because it made possible a settlement provision that, at the time, was apparently in the child's best interests. We reject Kathleen's claim that the provision was an impermissible conditional order.

PUBLIC POLICY
Kathleen also argues that the credit provision is unenforceable as against public policy. We have explained that public policy forbids enforcement of a private agreement that purports to discharge a parent's liability for child support, if the agreement does not adequately provide for the child.[10] But the agreement at issue here did not discharge Alan's liability for child support. Instead, it expressly provided Alan with credit for a payment that the parties agreed would constitute prepayment of any subsequent child support award. We conclude that on the facts of this case, the agreement is enforceable.
When overpayments of child support are voluntarily made outside the *342 terms of a court order, the general rule is that no credit is given for those payments.[11] The principle behind this rule is that such a credit would be tantamount to allowing one party to unilaterally modify the court's order, which could result in the deprivation of future support benefits.[12] Nonetheless, even then, a credit against child support can be granted where equity requires it.[13]
But Alan does not need equitable relief in the present case, because this case does not involve a voluntary overpayment. Rather, it involves a payment that was actually incorporated into the court's order. Alan is not seeking relief from the provisions of the decree, as modified by the March 14, 2000, orderhe is asking the court to enforce the modified decree's express terms. Alan's $14,000 payment was neither "voluntary" nor an "overpayment," because it was the payment specified in the court's order.
Instead, the question here is whether principles of equity demand that the credit provision of the March 14, 2000, order be set aside. The few courts to have considered comparable circumstances have concluded that giving such credit is appropriate.[14] Such a credit clause does not violate public policy because it is regarded as a lump-sum payment of child support, not a waiver of child support altogether.[15] And the agreement still provides regular support for the children, because it is the custodial parent's responsibility, being aware of the credit provision, to budget the payment accordingly.[16]
Kathleen relies on Gibson v. Gibson,[17] in which this court reversed a trial court's entry of a lump-sum child support award. But Gibson is distinguishable. The judgment in Gibson did not involve a credit provision. Rather, the trial court attempted to award, in advance, all the child support to be paid for the following 13 years. We held that it was
improper under the law to make a final, definite, and positive entry of such a judgment for the support of a minor child, for the amount to be paid must vary with the several needs of the child. . . and the court may also consider such changes in the financial condition of the father as are shown by the testimony. Therefore, the law has provided that the monthly payments can be changed from time to time as the evidence warrants.[18]
The problem in Gibson was not, as Kathleen suggests, an order for a lump-sum payment. Instead, we found error in the trial court's attempt to order, without the agreement of the parties, that all the child support be paid in advance. That error is *343 not present here, because the March 14, 2000, order was the product of a settlement agreement and does not preclude a future child support award or adjustment of that award. In fact, the order expressly acknowledges that possibilityit simply directs that Alan be credited for a substantial payment that he has already made.
Kathleen also argues that the March 14, 2000, order was not accompanied by a child support worksheet. It is true that all orders for child support, including modifications, should include the appropriate child support worksheets.[19] And in the event of a deviation from the Nebraska Child Support Guidelines, the trial court should state the amount of support that would have been required under the guidelines absent the deviation and include the reason for the deviation in the findings portion of the decree or order, or complete and file worksheet 5 in the court file.[20]
But it is not clear that a worksheet would have been necessary or appropriate for the March 14, 2000, modification of the decree, given that no ongoing child support award was entered in that order. And the basis for the orderboth the $14,000 payment and the credit provisionwas apparent from the record. In any event, we have never held that the absence of a child support worksheet provides a basis for a collateral attack on a final judgment. Once the March 14 order became final, even without a worksheet, it was enforceable.
Finally, Kathleen argues that Alan did not prove that giving him a credit against child support is in the best interests of the child. But Kathleen's argument misses the point. The record establishes that the $14,000 payment was originally made so Kathleen could make a downpayment on a house, for her benefit and the child's. Presumably, without the credit provision, no such payment would have been made.
Although the March 14, 2000, order was entered by agreement of the parties, determination of the best interests of a child includes a judicial decision based upon evidence and is not governed exclusively by a parental stipulation.[21] This principle imposed upon the trial court, in entering the March 14 order, an obligation to independently consider whether the order was in the best interests of the child.[22] There is no evidence in the record to suggest that it did not do so, and we reject Kathleen's collateral attack to the contrary. Because the March 14 order was presumably in the child's best interests when it was entered, it was not Alan's burden to prove it was still in the best interests of the child in order to have it enforced.
Kathleen was seeking relief from the terms of the modified decree, not Alan. Essentially, Kathleen sought to modify the decree again to set aside the credit provision. But the March 14, 2000, modification to the decree was the product of negotiation and settlement between the parties. And Kathleen presented no evidence of particular hardship to the child, or any other evidence that would justify setting the stipulated settlement aside. Without *344 such evidence, we find no equitable basis for reversing the trial court's decision to enforce the modified decree that was agreed to by the parties and approved by the court.

RES JUDICATA
Kathleen's final argument is that Alan's claim for credit against the 2006 child support award was barred by res judicata. Kathleen argues that Alan should have asked for credit in the last modification proceeding, and not after the child support award was entered. Therefore, Kathleen asserts that his declaratory judgment action should be barred by res judicata.
The doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.[23] The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action.[24]
But Alan's claim for credit against his child support obligation was not before the court, expressly or implicitly, in the last modification proceeding. Rather, it had been conclusively settled in the March 14, 2000, modification, from which Kathleen did not appeal. Alan was entitled to rely on the provisions of the March 14 order, at least until it became clear that he and Kathleen disagreed about its effectiveness. There is nothing in the record to suggest that Alan knew, in the last modification proceeding, that it would be necessary to seek a declaratory judgment to enforce the provisions of the March 14 order.[25] He was not required, in the later proceedings, to anticipate a collateral attack on the credit provision.
Instead, Alan's declaratory judgment action sought to establish, insofar as the $14,000 credit was concerned, that a portion of Alan's liability for child support had already been discharged. We have previously noted, in the context of approving credit against child support judgments, that a district court has the inherent power to determine the status of its judgments.[26] The district court may, on motion and satisfactory proof that a judgment has been paid and satisfied in whole or in part by the act of the parties thereto, order it discharged and canceled of record, to the extent of the payment or satisfaction.[27] While the 2006 child support award set a date upon which Alan's obligation to pay child support would commence, that did not preclude the court from finding, pursuant to the March 14, 2000, order, that part of the March 7, 2006, award had already been satisfied by Alan's $14,000 payment.

CONCLUSION
The credit provision was not void as a conditional order or as against public policy. Alan's declaratory judgment action to enforce the provision was not barred by res judicata. Therefore, Kathleen's assignments *345 of error lack merit, and we affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] Law Offices of Ronald J. Palagi v. Howard, 275 Neb. 334, 747 N.W.2d 1 (2008).
[2] See Strunk v. Chromy-Strunk, 270 Neb. 917, 708 N.W.2d 821 (2006).
[3] See id.
[4] Id.
[5] Id.
[6] See id.
[7] Id.
[8] Id.
[9] Id.
[10] See State on behalf of Kayla T. v. Risinger, 273 Neb. 694, 731 N.W.2d 892 (2007).
[11] See, Jameson v. Jameson, 13 Neb.App. 703, 700 N.W.2d 638 (2005); Palagi v. Palagi, 10 Neb.App. 231, 627 N.W.2d 765 (2001); Griess v. Griess, 9 Neb.App. 105, 608 N.W.2d 217 (2000).
[12] See Griess, supra note 11.
[13] See id. See, e.g., Berg v. Berg, 238 Neb. 527, 471 N.W.2d 435 (1991); Contra Costa Cty. ex rel. Petersen v. Petersen, 234 Neb. 418, 451 N.W.2d 390 (1990); Cotton v. Cotton, 222 Neb. 306, 383 N.W.2d 739 (1986).
[14] See, Hewson v. Hewson, 708 N.W.2d 889 (N.D.2006); Picht v. Henry, 252 Iowa 559, 107 N.W.2d 441 (1961); Blume v. Stewart, 715 N.E.2d 913 (Ind.App.1999); Marriage of Babbitt, 50 Wash.App. 190, 747 P.2d 507 (1987).
[15] See Marriage of Babbitt, supra note 14. See, also, Hewson, supra note 14.
[16] See Blume, supra note 14.
[17] Gibson v. Gibson, 147 Neb. 991, 26 N.W.2d 6 (1947).
[18] Id. at 1000, 26 N.W.2d at 10.
[19] See, e.g., Nebraska Child Support Guidelines, paragraph C; Gress v. Gress, 271 Neb. 122, 710 N.W.2d 318 (2006).
[20] Gress, supra note 19.
[21] See, Stuhr v. Stuhr, 240 Neb. 239, 481 N.W.2d 212 (1992); Schulze v. Schulze, 238 Neb. 81, 469 N.W.2d 139 (1991). See, also, Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007); Lawson v. Pass, 10 Neb.App. 510, 633 N.W.2d 129 (2001).
[22] See id.
[23] Ichtertz v. Orthopaedic Specialists of Neb., 273 Neb. 466, 730 N.W.2d 798 (2007).
[24] Id.
[25] See id.
[26] Cotton, supra note 13. See, also, Berg, supra note 13; Petersen, supra note 13.
[27] Berg, supra note 13; Cotton, supra note 13.