Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/14/2020 09:06 AM CST

In re Interest of Giavonni P., a child
under 18 years of age.
State of Nebraska, appellee, v. Nebraska
Department of Health and Human
Services, appellant.

___ N.W.2d ___

Filed November 22, 2019.    Nos. S-18-1130, S-18-1135.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes: Judgments: Appeal and Error.** The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.
3. **Judgments: Final Orders.** Orders purporting to be final judgments, but that are dependent upon the occurrence of uncertain future events, do not necessarily operate as "judgments" and may be wholly ineffective and void as such.
4. \_\_\_\_: \_\_\_\_. A conditional judgment may be wholly void because it does not "perform in praesenti" and leaves to speculation and conjecture what its final effect may be.
5. \_\_\_\_: \_\_\_\_. While conditional orders will not automatically become final judgments upon the occurrence of the specified conditions, they can operate in conjunction with a further consideration of the court as to whether the conditions have been met, at which time a final judgment may be made.
6. **Final Orders: Appeal and Error.** The three types of final orders which may be reviewed on appeal are (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.

7. **Juvenile Courts: Words and Phrases.** Juvenile court proceedings are special proceedings.

8. **Moot Question: Jurisdiction.** Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction.

9. **Moot Question: Jurisdiction: Courts: Judgments: Dismissal and Nonsuit.** An actual case or controversy is necessary for the exercise of judicial power. In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. Therefore, as a general rule, a moot case is subject to summary dismissal.

10. **Moot Question: Records: Appeal and Error.** When a party or parties are aware that appellate issues have become moot during the pendency of the appeal and such mootness is not reflected in the record, in the interest of judicial economy, a party may file a suggestion of mootness as to the issue or issues claimed to be moot.

11. **Moot Question.** Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.

12. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.

13. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.

14. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

15. **Moot Question: Appeal and Error.** Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.

16. **Moot Question: Words and Phrases.** In determining whether the public interest exception should be invoked, a court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Neleigh N. Boyer and Marcie Bergquist, Special Assistant Attorneys General, of Nebraska Department of Health and Human Services, for appellant.

Jeffrey A. Wagner and Kyle J. Flentje, of Wagner, Meehan & Watson, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

Following orders of the Douglas County Separate Juvenile Court, Giavonni P. was placed at the Lincoln Regional Center (LRC). The Nebraska Department of Health and Human Services (Department) appeals. We affirm.

## II. BACKGROUND

Giavonni was adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) in April 2010 and placed with the Department. He has been in a variety of placements since that time. In October 2017, Giavonni was adjudicated under § 43-247(1) and placed at Capstone, a psychiatric residential treatment facility (PRTF) in Detroit, Michigan. In late 2017, Giavonni was also placed on probation with the office of juvenile probation following adjudication and disposition on a charge of theft by unlawful taking.

On October 9, 2018, Giavonni's guardian ad litem filed a motion alleging that placement in the Capstone program was no longer in Giavonni's best interests. The guardian ad litem requested that Giavonni be returned to Nebraska and placed at the LRC.

A hearing was held on that motion on October 22, 2018. The juvenile court ordered Giavonni returned to Nebraska and placed at the Douglas County Youth Center (DCYC) for secure detention. The juvenile court scheduled further placement review for November 9.

At the November 9, 2018, hearing, Giavonni was represented individually and also by a guardian ad litem. Giavonni's father appeared with counsel, and Douglas County and the Department appeared with separate representation. On appeal,

only the Department and the guardian ad litem filed briefs. The State (represented by Douglas County) waived oral argument. No other party has entered an appearance.

At the placement review hearing, Giavonni's family permanency specialist reviewed Giavonni's recent history. That history included flight from Capstone, the PRTF in Detroit; violent behavior toward other residents and staff at Capstone; and property destruction. In addition, while in Detroit, Giavonni refused to engage in therapy or take his medications. Another witness testified that Capstone was more like jail than a treatment center and reinforced Giavonni's refusal to leave his room or to interact with others in any setting. The witness also reiterated that Giavonni was not taking his medications while at Capstone.

Upon his return to Nebraska and placement at the DCYC, Giavonni was again involved with acts of aggression. He had not met with a therapist, but was apparently taking his medication.

Other evidence presented showed that there were concerns with placing Giavonni at any facility which was not secure and which would require him to have a roommate, due to the fact that he was a flight risk and was aggressive. A psychiatrist testified that Giavonni needed treatment in a locked facility such as an adolescent PRTF, medical stabilization, and placement in a community setting. There was evidence that there were only approximately 20 facilities in the United States that met Giavonni's treatment criteria. Of the facilities that responded to an inquiry, none was able to admit Giavonni, either because of his violent history or because of space constraints.

Following the hearing, the juvenile court entered an order in each case stating that if Giavonni was not placed in a PRTF by November 26, 2018, the Douglas County sheriff should deliver him to the LRC, where he was to remain until a PRTF placement could be found. On November 27, the court was advised at a placement check hearing that Giavonni had been placed at the LRC.

The Department filed a notice of appeal in each case on December 3, 2018, indicating that it appealed from the juvenile court's November 9 order (the notice of appeal is dated November 28, 2018). On May 6, 2019, Giavonni was moved from the LRC into a new placement. Prior to oral arguments, the guardian ad litem filed a suggestion of mootness, which we denied.

## III. ASSIGNMENTS OF ERROR

The Department assigns that the juvenile court erred in ordering that Giavonni (1)(a) be placed at the LRC (b) on a specific date and (2) remain at the LRC until further order of the court or until a placement was unanimously agreed upon by the parties.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[1] The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.[2]

## V. ANALYSIS

The Department appeals from the orders of the juvenile court placing Giavonni at the LRC. While its argument varies slightly based on the underlying adjudication (law violation versus neglect), the crux of the Department's assertion is that the placement orders usurped the LRC's statutory authority to administer and manage its patient admission and discharge process.

### 1. FINAL ORDER

In each case, the guardian ad litem argues that this court lacks a final order, both because the juvenile court's order was

---

[1] *In re Interest of Reality W.*, 302 Neb. 878, 925 N.W.2d 355 (2019).

[2] *Id.*

conditional and because that order did not affect a substantial right. We conclude that the order in each case is final.

### (a) Conditional Order

The guardian ad litem first argues that the juvenile court's order in each case was not final because it was conditional: at the time the order was entered, no one knew "when or even whether Giavonni would be accepted by a [PRTF] and if no such facility arose, there is no direction given by the court, creating speculation and conjecture, making such order a conditional judgment."[3]

[3-5] Orders purporting to be final judgments, but that are dependent upon the occurrence of uncertain future events, do not necessarily operate as "judgments" and may be wholly ineffective and void as such.[4] We have explained that a conditional judgment may be wholly void because it does not "perform in praesenti" and leaves to speculation and conjecture what its final effect may be.[5] We have also explained that while conditional orders will not automatically become final judgments upon the occurrence of the specified conditions, they can operate in conjunction with a further consideration of the court as to whether the conditions have been met, at which time a final judgment may be made.[6]

The juvenile court's order in each case stated that the Department and Giavonni's probation officer should seek "appropriate secure [PRTF] placement" and that "if . . . Giavonni . . . is not accepted for placement by November 26, 2018[,] . . . then [he] shall be . . . delivered by the Douglas County Sheriff to the [LRC] in Lincoln, Nebraska." The court went on to order that Giavonni "remain in the [LRC] . . . until . . . accepted for placement at an accredited, secure [PRTF],

---

[3] Brief for appellee guardian ad litem in case No. S-18-1130 at 14.

[4] *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008).

[5] *Id.*

[6] *Id.*

contingent on written approval" of the guardian ad litem, the Department, and Giavonni's probation officer, attorney, and treatment team, or, "lacking such unanimous approval, until further Order of the Court." And on November 27, 2018, the day after Giavonni was moved to the LRC, a placement check hearing was held, at which time an order acknowledging Giavonni's placement and the setting of the next hearing date were entered in each case.

In each case, when considering the November 27, 2018, order in light of the November 9 order, it is clear that the juvenile court's order is not conditional. There is no merit to this argument.

### (b) Order Affecting Substantial Right

The guardian ad litem also argues that the juvenile court's order in each case was not final because it did not affect a substantial right of the Department.

[6] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders that may be reviewed on appeal are (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.

[7] Juvenile court proceedings are special proceedings.[7] Thus, to have a final order a juvenile court's order must affect a substantial right. We conclude herein that the juvenile court's order in each case does affect a substantial right in that it affects the Department's ability, through its role of directing behavioral services, to administer admissions and care at the LRC.[8] As such, the order in each case is final.

---

[7] *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019).

[8] See Neb. Rev. Stat. §§ 71-806 and 83-109 (Cum. Supp. 2018).

## 2. Mootness

Since the Department filed its appeals, Giavonni has been moved out of the LRC and into an out-of-state PRTF. As such, Giavonni's guardian ad litem filed in each appeal a motion to dismiss on the ground of mootness. The Department agrees that Giavonni's appeals may be moot but, in its response, directed us to a list of other juveniles who have been ordered to the LRC. The Department asked that we utilize the public interest exception to the mootness doctrine to address the question presented by these appeals.

[8-10] Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction.[9] An actual case or controversy is necessary for the exercise of judicial power.[10] In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory.[11] Therefore, as a general rule, a moot case is subject to summary dismissal.[12] It is well established that when a party or parties are aware that appellate issues have become moot during the pendency of the appeal and such mootness is not reflected in the record, in the interest of judicial economy, a party may file a suggestion of mootness in the Nebraska Supreme Court or Nebraska Court of Appeals as to the issue or issues claimed to be moot.[13]

[11-14] Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[14] An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack

---

[9] *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

a legally cognizable interest in the outcome of the action.[15] A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.[16] The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

[15,16] Under certain circumstances, an appellate court may entertain the issues presented by a moot case when the claims presented involve a matter of great public interest or when other rights or liabilities may be affected by the case's determination.[17] In determining whether the public interest exception should be invoked, the court considers the public or private nature of the question presented, the desirability of an authoritative adjudication for future guidance of public officials, and the likelihood of future recurrence of the same or a similar problem.[18]

Following the filing of these appeals, the guardian ad litem filed a suggestion of mootness and motion to dismiss in each appeal, noting that Giavonni had been moved from the LRC to a PRTF located outside of the state. Because the purpose of the Department's appeals was to challenge Giavonni's placement at the LRC, and because Giavonni was no longer placed at the LRC, we agree that the appeals are moot.

But we also agree with the Department that given that other juveniles are being placed at the LRC (or indeed that Giavonni could be returned to the LRC) due to a lack of other adequate programming, we should reach the merits of these appeals under the public interest exception to the mootness doctrine.

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

### 3. Authority of Juvenile Court

The primary issue on appeal in each case is whether the juvenile court had the authority to place Giavonni at the LRC, on a date certain or otherwise. We find two particular statutes dispositive in reaching this conclusion.

Most relevant to this inquiry is Neb. Rev. Stat. § 43-285(1) (Cum. Supp. 2018). We have interpreted § 43-285(1) to give juvenile courts the power to assent to and dissent from the decisions of the Department; the purpose of § 43-285(1) was to remove from the Department's complete control a minor whose care was given to the Department under the juvenile code. The juvenile court has the power to assent to or dissent from the "care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it."[19]

Also of note is Neb. Rev. Stat. § 43-289 (Reissue 2016), which provides:

> The court may, when the health or condition of any juvenile adjudged to be within the terms of such code shall require it, cause the juvenile to be placed in a public hospital or institution for treatment or special care or in an accredited and suitable private hospital or institution which will receive the juvenile for like purposes. Whenever any juvenile has been committed to the Department . . . , the [D]epartment shall follow the court's orders, if any, concerning the juvenile's specific needs for treatment or special care for his or her physical well-being and healthy personality.

So, § 43-285(1) gives a juvenile court the power to assent to, among other things, "care, placement, [and] psychiatric services," and § 43-289 takes this one step further in allowing a court to order that a juvenile be placed in a "public hospital or institution for treatment or special care." In the circumstances presented by Giavonni's cases, the juvenile court did not agree

---

[19] § 43-285(1).

with the Department's decisions with respect to Giavonni's care and placement. At the time of the hearing, Giavonni was placed at the DCYC. The juvenile court concluded that Giavonni would best be served with a placement in a PRTF, but that failing that, the best placement for the safety of both Giavonni and others was at the LRC. The juvenile court had the authority to order this placement.

### (a) Authority of LRC to House and Treat Juveniles

We turn next to the Department's contention that the juvenile court's placement was outside its authority because the juvenile code prohibits juveniles from being placed in a detention facility—whether juvenile or adult.

We reject this contention because it assumes that the LRC is a detention facility, when Neb. Rev. Stat. § 71-911 (Reissue 2018) defines it as a hospital.[20] We also observe that in contrast to the Department's argument regarding this on appeal, the Department suggested at oral arguments that the DCYC, a juvenile detention facility, might be a placement choice for Giavonni.

The Department's arguments are without merit.

### (b) Authority of LRC to Admit and Discharge Patients

The Department next argues that the juvenile court has interfered with the authority of the Department and the LRC to prioritize admissions and decide upon patient discharges from the LRC. The Department also notes that even if the juvenile court has the general authority to place a juvenile at the LRC, it does not have the ability to do so on a date certain.

Section 71-806(1) directs the Department's division of behavioral health to "act as the chief behavioral health authority for the State of Nebraska, and [to] direct the administration

---

[20] See, also, Neb. Rev. Stat. § 83-305 (Reissue 2014).

and coordination of the public behavioral health system, including, but not limited to . . . [a]dministration and management of the division, regional centers, and any other facilities and programs operated by the division." Section 83-109 states:

> The Department . . . shall have general control over the admission of patients and residents to all institutions over which it has jurisdiction. . . . Transfers of patients or residents from one institution to another shall be within the exclusive jurisdiction of the [D]epartment and shall be recorded in the office of the [D]epartment, with the reasons for such transfers.

Neb. Rev. Stat. § 83-338 (Reissue 2014) sets priorities for admission to hospitals for the mentally ill. The last paragraph of § 43-289 notes that "[a] juvenile committed to any such institution shall be subject to the control of the superintendent thereof . . . ."

We concluded above that the juvenile court has the authority to place an individual at the LRC. These statutes do not change that result. Contrary to the Department's contention, we do not read the juvenile court's order in each case to place Giavonni at the LRC on a date certain. Rather, the juvenile court ordered Giavonni placed in an appropriate PRTF by November 26, 2018; failing that, Giavonni was to be placed at the LRC. There is no merit to the Department's arguments. We emphasize, however, that our opinion should not be read to allow courts to prioritize some individuals over others in the admissions and placement process for the LRC.

### (c) Best Interests

Finally, the Department argues that Giavonni's best interests are not being served by his placement at the LRC, observing that such a placement was similar to the jail-like conditions at Capstone. At the placement review hearing, the Department suggested that placement at a youth rehabilitation and treatment center would be appropriate, but it did not renew that

argument on appeal. At oral arguments, the Department suggested that Giavonni should remain at the DCYC until a bed at an appropriate PRTF could be located.

There was evidence at the hearing that the LRC was a secure facility with the ability to provide Giavonni with the psychiatric treatment he needed while allowing him to stay in a single room, keeping himself and others safe. While we agree that an adult facility is not the optimal choice for a juvenile offender, given the lack of other options and Giavonni's needs, placement at the LRC was in his best interests at the time of his placement.

## VI. CONCLUSION

The decision of the juvenile court in each case is affirmed.

AFFIRMED.