Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/12/2024 09:07 AM CST

In re Interest of Ricardo T. et al.,
children under 18 years of age.
State of Nebraska, appellant, v. Cheyenne M.
and Julian T., appellees, and Oglala
Sioux Tribe, intervenor-appellee.

___ N.W.2d ___

Filed January 12, 2024.    Nos. S-23-234, S-23-236, S-23-237, S-23-238.

1. **Indian Child Welfare Act: Federal Acts.** The Indian Child Welfare Act is intended to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.

2. **Indian Child Welfare Act: Federal Acts: Legislature: Public Policy.** In adopting the Nebraska Indian Child Welfare Act, the Legislature declared that it was the policy of this state to cooperate fully with Indian tribes in Nebraska in order to ensure that the intent and provisions of the federal Indian Child Welfare Act are enforced.

3. **Judgments: Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.

4. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

5. **Jurisdiction: Final Orders: Appeal and Error.** When an appellate court is without jurisdiction to act, the appeal must be dismissed. For an appellate court to acquire jurisdiction of an appeal, there must be a final order or judgment entered by the court from which the appeal is taken;

conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.

6. **Judgments: Appeal and Error.** Conditional orders are not appealable.

7. **Judgments: Jurisdiction: Appeal and Error.** Orders that specify that a trial court will or will not exercise its jurisdiction based on future action or inaction by a party are conditional and therefore not appealable.

8. **Judgments.** If an order looks to the future in an attempt to judge the unknown, it is a conditional order.

Petitions for further review from the Court of Appeals, Pirtle, Chief Judge, and Moore and Welch, Judges, on appeal thereto from the County Court for Madison County, Ross A. Stoffer, Judge. Judgment of Court of Appeals affirmed.

Nathaniel T. Eckstrom, Deputy Madison County Attorney, for appellant.

Nathan J. Stratton, of Stratton, DeLay, Doele, Carlson & Buettner, P.C., L.L.O., for appellee Julian T.

Melissa A. Wentling, Adams County Public Defender, for appellee Cheyenne M.

Dana L. Hanna, of Hanna Law Office, P.C., for intervenor-appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## I. INTRODUCTION

This consolidated appeal presents the question of whether a juvenile court's order granting a request to transfer cases to the jurisdiction of a tribal court under the federal Indian Child Welfare Act (ICWA)[1] and the Nebraska Indian Child Welfare Act (NICWA)[2] was a final, appealable order. Given

---

[1] 25 U.S.C. §§ 1901 to 1963 (2018).

[2] Neb. Rev. Stat. §§ 43-1501 to 43-1517 (Reissue 2016).

the order's language and the statutory framework governing the transfer to tribal courts, we find that the order was conditional and not appealable. We therefore affirm the Nebraska Court of Appeals' summary dismissal of the State's appeals of the order for lack of jurisdiction.

## II. BACKGROUND

### 1. Legal Background

[1,2] Congress enacted ICWA in 1978 with the stated intent of

> protect[ing] the best interests of Indian children and . . . promot[ing] the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.[3]

NICWA was enacted by the Nebraska Legislature in 1985 to clarify state policies and procedures regarding Nebraska's implementation of ICWA.[4] With NICWA, the Legislature declared that it is the policy of this state to "cooperate fully with Indian tribes in Nebraska in order to ensure that the intent and provisions of [ICWA] are enforced."[5]

As relevant to this consolidated appeal, ICWA and NICWA include provisions regarding the transfer of cases from a state juvenile court to a tribal court. As set forth in § 43-1504(2), the specific provision at issue prescribes as follows:

> In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of

---

[3] 25 U.S.C. § 1902. See, also, *Haaland v. Brackeen*, 599 U.S. 255, 143 S. Ct. 1609, 216 L. Ed. 2d 254 (2023) (U.S. Supreme Court recently upholding constitutionality of certain provisions of ICWA).

[4] § 43-1502.

[5] *Id.*

the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the primary tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, except that such transfer shall be subject to declination by the tribal court of the primary tribe.[6]

The comparable provision of federal law, 25 U.S.C. § 1911(b) of ICWA, includes nearly identical language.[7] Because NICWA implements ICWA in Nebraska and the relevant language of both acts is largely the same, for the sake of consistency, we generally refer to the applicable provisions of NICWA in our analysis, regardless of the parties' usage.

## 2. Factual and Procedural Background

Beginning in 2018 and continuing into 2022, the State initiated proceedings in the county court for Madison County, Nebraska, sitting as a juvenile court, under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) to adjudicate five children, who are all siblings, in four related cases. Those children are Ricardo T., Jovanni T., Mirella T., Leticia T., and Reina T. Each child is an "Indian child" as defined by NICWA.[8] As each case was a child custody proceeding involving the potential termination of parental rights, the Oglala Sioux Tribe (the Tribe) moved to intervene in each case under the authority of ICWA.[9] The Tribe's motions were granted by the juvenile court.

---

[6] Compare with 25 U.S.C. § 1911(a) of ICWA and § 43-1504(1) of NICWA (providing that tribes have exclusive jurisdiction over child custody proceeding involving "Indian child" who is domiciled or residing within tribe's reservation or who is ward of tribal court).

[7] Cf. 25 U.S.C. § 1911(b) ("[p]rovided, [t]hat such transfer shall be subject to declination by the tribal court of such tribe") (emphasis omitted).

[8] § 43-1503(8).

[9] See 25 U.S.C. § 1911(c). See, also, § 43-1504(3).

In 2022, the State filed supplemental petitions to terminate the parental rights of Cheyenne M. and Julian T., the natural parents of all five children. Thereafter, in January 2023, after the juvenile court had heard multiple days of trial on the supplemental petitions to terminate parental rights, the Tribe moved to transfer each case to the jurisdiction of the Oglala Sioux Tribe Children's Court (tribal court) in Pine Ridge, South Dakota, under 25 U.S.C. § 1911(b) of ICWA, and by implication, § 43-1504(2) of NICWA. The children's parents then jointly filed a motion to transfer jurisdiction of each case to the tribal court as well. The State objected to the motion to transfer, arguing that because the motion was not filed until several days after the termination trial began, there was good cause to deny it.

The parties discussed the motion to transfer at a hearing on January 10, 2023. The State first pointed to 25 C.F.R. § 23.116 (2022), a federal regulation promulgated by the Bureau of Indian Affairs to implement ICWA. That regulation, 25 C.F.R. § 23.116, provides: "Upon receipt of a transfer petition, the State court must ensure that the Tribal court is promptly notified in writing of the transfer petition. This notification may request a timely response regarding whether the Tribal court wishes to decline the transfer."

The State expressed to the juvenile court that because the Tribe and the children's parents had previously petitioned for the transfer to the tribal court, this federal regulation required the juvenile court to contact the tribal court to inquire if the tribal court would accept the transfer. The Tribe did not disagree with the State's description of 25 C.F.R. § 23.116 but said that the tribal court had a standing order not to decide whether to accept a transfer until after the juvenile court entered a conditional order granting the motion to transfer. According to the Tribe, if the juvenile court were to grant the motion, it would be dependent on the timely acceptance by the tribal court. Thereafter, the State agreed that if the

juvenile court transferred the matter, the tribal court was entitled to decide whether to accept or decline the transfer.

On February 20, 2023, the juvenile court entered an order granting the motion to transfer the cases to the tribal court after finding that the "advanced stage" of a case no longer qualified as good cause to deny a transfer under the ICWA guidelines published by the Bureau of Indian Affairs.[10] The order concluded by stating:

> [T]he Motions to Transfer are granted. The Court further requests that the Tribe file a written indication with the Court in regard to its acceptance or declination of the transfer. A status hearing is also set for March 28, 2023 at 9:30 a.m. unless the Tribe's acceptance of the transfer has been filed prior to that date and time.

The State then filed notices in each case of its intent to appeal the order transferring jurisdiction to the tribal court. At the time the State filed notices of its intent to appeal, neither the Tribe nor the tribal court had filed a written indication with the juvenile court regarding its acceptance or declination of the transfer.

The Tribe and the children's parents moved for summary dismissal of the State's appeal for lack of subject matter jurisdiction, arguing that the transfer order was not final and appealable, but, rather, was a conditional order that granted the motion to transfer jurisdiction to the tribal court, subject to the juvenile court's receipt of an order from the tribal court accepting jurisdiction. The State objected to the motions for summary dismissal, arguing that the juvenile court's order was final and appealable.

The Court of Appeals sustained the motions of the Tribe and the parents and summarily dismissed the State's appeal on April 4, 2023, for lack of jurisdiction,[11] because the juvenile

---

[10] See *In re Interest of Tavian B.*, 292 Neb. 804, 874 N.W.2d 456 (2016).

[11] See Neb. Ct. R. App. P. § 2-107(B)(1) (rev. 2022).

court's order transferring the cases to the tribal court "was not yet final and appealable." The Court of Appeals went on to state in its minute entry that, according to § 43-1504(2) and this court's decision in *In re Interest of C.W. et al.*,[12] "[a] transfer of a state court proceeding to the jurisdiction of the primary tribe is subject to declination by the tribal court of the primary tribe."

The State petitioned this court for further review, which we granted.

## III. ASSIGNMENT OF ERROR

The State assigns, restated, that the Court of Appeals erred in determining that the State's appeals should be dismissed because the juvenile court's order transferring the cases to the tribal court was not final and appealable.

## IV. STANDARD OF REVIEW

[3] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision.[13]

## V. ANALYSIS

As the State asserts, the issue in this case is "whether the [j]uvenile [c]ourt's order transferring jurisdiction to the [tribal court] was a final order subject to appeal or a conditional order which could not be appealed."[14] This question implicates our familiar standards regarding appellate jurisdiction.

---

[12] *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992), *overruled on other grounds, In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012).

[13] *In re Interest of Manuel C. & Mateo S.*, 314 Neb. 91, 988 N.W.2d 520 (2023), *modified on denial of rehearing* 314 Neb. 580, 991 N.W.2d 305.

[14] Brief for appellant in support of petition for further review at 6.

### 1. Appellate Court's Duty to Determine Whether It Has Jurisdiction

[4,5] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[15] When an appellate court is without jurisdiction to act, the appeal must be dismissed.[16] For an appellate court to acquire jurisdiction of an appeal, there must be a final order or judgment entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.[17]

[6] Of the categories of orders that are denominated as "final orders which may be vacated, modified, or reversed" by an appellate court under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022), the only potentially applicable category is "[a]n order affecting a substantial right made during a special proceeding."[18] We have previously held that a juvenile court proceeding is a special proceeding for appellate purposes.[19] However, an order cannot qualify as a final, appealable order that affects a substantial right under § 25-1902 when it is "conditional." We thus turn to our jurisprudence regarding the characteristics of conditional orders, which we have held are not appealable.[20]

In *Evert v. Srb*,[21] a recent decision of this court discussing conditional orders and judgments, we began by stating the long held proposition that, generally, when an order leaves no further action of the court to dispose of the cause pending,

---

[15] *In re Interest of Sayrah P., ante* p. 436, 996 N.W.2d 623 (2023).

[16] *Id.*

[17] *Id.* See, also, Neb. Rev. Stat. § 25-1911 (Reissue 2016).

[18] § 25-1902(1)(b).

[19] *In re Interest of Sayrah P., supra* note 15.

[20] See *Evert v. Srb*, 308 Neb. 895, 957 N.W.2d 475 (2021).

[21] *Id.*

the order is final and appealable. When the cause is retained for further action by the court, the order is interlocutory and not appealable.[22] However, after noting that proposition, we then noted several other propositions from this court elaborating on the nature of a conditional order. We again summarize and restate those propositions below.

[7,8] Orders that specify that a trial court will or will not exercise its jurisdiction based on future action or inaction by a party are conditional and therefore not appealable.[23] Although they are not void as interlocutory orders, conditional orders are wholly ineffective and void insofar as they purport to be final orders because they are dependent upon the occurrence of uncertain future events.[24] Such conditional orders do not perform in the present and have no force and effect as a final order or judgment from which an appeal can be taken because they leave to speculation and conjecture as to what their final effect may be.[25] In other words, if an order looks to the future in an attempt to judge the unknown, it is a conditional order.[26]

---

[22] *Id.* (citing *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999)). See, also, *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989); *Anson v. Kruse*, 147 Neb. 989, 25 N.W.2d 896 (1947); *Smith v. Sahler*, 1 Neb. 310 (1871)*.*

[23] *Evert, supra* note 20; *Stevens v. Stevens*, 292 Neb. 827, 874 N.W.2d 453 (2016).

[24] See, *Evert, supra* note 20; *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012); *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006); *Custom Fabricators v. Lenarduzzi*, 259 Neb. 460, 610 N.W.2d 391 (2000); *State ex rel. Stenberg v. Moore,* 258 Neb. 199, 602 N.W.2d 465 (1999).

[25] See, *Evert, supra* note 20; *In re Interest of Giavonni P.*, 304 Neb. 580, 935 N.W.2d 631 (2019); *Fitzgerald, supra* note 24; *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008).

[26] See, *Evert,* supra note 20; *Nichols v. Nichols*, 288 Neb. 339, 847 N.W.2d 307 (2014); *Fitzgerald, supra* note 24.

## 2. Transfer Order Was Not
## Final and Appealable

The State argues that the juvenile court's order transfer-ring the cases to the tribal court was a final, appealable order because it was entered during a special proceeding and affected a substantial right. The State further contends that the order was not conditional because if the tribal court accepted the transfer, there was no additional action to be completed by the juvenile court to divest itself of jurisdiction. The Tribe and the children's parents, on the other hand, argue that the order was not final and appealable because it was conditional as the tribal court could decline the transfer and the matters would remain in the juvenile court. Based on the language of the order, read in light of NICWA's provisions regarding the procedure for the transfer of a case from juvenile court to a tribal court, we agree with the Tribe and the parents.

### (a) Language of Juvenile Court's Transfer
### Order Was Conditional

We turn first to the language of the juvenile court's order. As noted above, the juvenile court "order[ed] that the Motions to Transfer [were] granted," but then "further request[ed] that the Tribe file a written indication with the Court in regard to its acceptance or declination of the transfer." As a preliminary matter, we understand this reference to the Tribe to mean the tribal court, because it is the tribal court, not the Tribe, that has the authority to decline the transfer of a case from a juvenile court under NICWA.[27]

The State argues that because the order "did not specify that any action from the [t]ribal [c]ourt was *required* for the trans-fer to take place,"[28] but, rather, *requested* that the tribal court

---

[27] § 43-1504(2).

[28] Brief for appellant in support of petition for further review at 6 (emphasis in original); supplemental brief for appellant in support of petition for further review at 11 (emphasis in original).

indicate whether it accepted or declined the transfer, the order was "self-operating"[29] and final; thus, there was nothing further that the juvenile court needed to do to effectuate the transfer. We disagree with the State's reading of the transfer order.

While the transfer order granted the Tribe's and parents' motions to transfer, it requested that the tribal court indicate whether it would accept or decline the transfer. We thus read the order as granting the transfer to the tribal court, subject to, or conditioned upon, the tribal court's subsequent acceptance or declination of the transfer. The order granting the transfer was dependent on a future event, that being the tribal court's acceptance or declination of the transfer. We therefore agree with the Tribe and the parents that the order was "interlocutory and nonappealable."[30]

It is immaterial that the "[j]uvenile [c]ourt did not indicate that any further action . . . was required in order to complete the transfer,"[31] as the State argues. By indicating that the tribal court could choose to accept or decline the transfer, the order reflected that the transfer was not final until some further action occurred. The order was therefore dependent on the occurrence of uncertain future events, left to speculation as to what its final effect would be, and looked to the future in an attempt to judge the unknown. Accordingly, it was conditional and not appealable.[32]

After oral argument, the State was granted leave to file a supplemental transcript that showed the tribal court entered an order dated March 27, 2023, accepting the transfer of the cases. That acceptance has no bearing on our analysis, because it came after the State filed its notices of appeal.

---

[29] Objection of appellant to motion for summary dismissal at 3.

[30] Joint brief for appellees in opposition of petition for further review at 5.

[31] Supplemental brief for appellant in support of petition for further review at 11.

[32] See, *id.*; *Fitzgerald, supra* note 24.

(b) Juvenile Court's Order Was
Conditional Under NICWA

Our reading of the transfer order as conditional also reflects the statutory framework set forth in NICWA regarding requests to transfer jurisdiction from a state juvenile court to a tribal court. Again, the applicable provision of NICWA states as follows:

> In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, *the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the primary tribe, absent objection by either parent,* upon the petition of either parent or the Indian custodian or the Indian child's tribe, *except that such transfer shall be subject to declination by the tribal court of the primary tribe.*[33]

Several aspects of this statute, as applied to the present case, are not in dispute. As noted above, the children in this consolidated appeal are all "Indian children" as defined by § 43-1503(8) of NICWA, and the Tribe is their primary tribe. The state court proceedings at issue were for the termination of parental rights to the children. The children were not domiciled or residing within their tribe's reservation, and the Tribe and the children's parents petitioned to transfer the proceeding to the tribal court within the jurisdiction of the children's tribe.

Accordingly, under § 43-1504(2), the juvenile court was statutorily required to transfer the cases to the tribal court, unless one or more of the following exceptions were met: (1) good cause existed for denying the transfer, (2) either parent objected to the transfer, or (3) the tribal court declined the transfer.[34] As mentioned, the juvenile court rejected the

---

[33] § 43-1504(2) (emphasis supplied). Cf. 25 U.S.C. § 1911(b).

[34] See, also, 25 U.S.C. § 1911(b).

State's arguments that there was good cause to deny the transfer, and the parents did not object to the transfer; they sought it. Therefore, the only basis for which the cases would not have been transferred to the tribal court was if the tribal court declined the transfer.

At its core, we find that the "subject to declination by the tribal court" language of § 43-1504(2) of NICWA requires us to treat the juvenile court's order here as conditional rather than final and appealable. The transfer was "subject to," or dependent and conditioned upon, whether the tribal court subsequently declined the transfer. When the juvenile court's order granting the transfer was entered, the tribal court had not yet indicated whether it would accept or decline the transfer. Of course, the tribal court could have declined the transfer, and if so, the cases would remain the jurisdiction of the juvenile court. The juvenile court's order was thus the triggering event that began the transfer process.

The State also argues that because the relevant statutory language does not specify any action that a tribal court must affirmatively take to accept the transfer of jurisdiction, but instead provides only that the transfer is subject to the tribal court's declination, the transfer was complete upon the entry of the juvenile court's order. At the same time, however, the State concedes that the transfer was complete "unless the [t]ribal [c]ourt declined the case and sent it back"[35] and "unless the tribal court subsequently declines the transfer and returns jurisdiction to the juvenile court."[36] In taking the latter position, the State effectively concedes the characteristic that makes the transfer order conditional and not appealable.

In our reading of § 43-1504(2), even if the juvenile court finds that no parent has objected to the transfer and that there is not good cause to deny the transfer, the tribal court

---

[35] Brief for appellant in support of petition for further review at 7.

[36] Objection of appellant to motion for summary dismissal at 2.

always has the statutory discretion to decline the transfer of a case to its jurisdiction, and the transfer of the case from the juvenile court to the tribal court is final and completed only if the tribal court does not subsequently decline the transfer. Without knowing whether the tribal court will decline the transfer, declination is always possible. Such uncertainty renders the juvenile court's transfer order conditional.

Our determination is consistent with our decision in *In re Interest of C.W. et al.*, which appears to be the only previous case wherein a Nebraska court had the opportunity to address whether a juvenile court's order granting a request to transfer jurisdiction to a tribal court was final and appealable.[37] There, we affirmed the juvenile court's decision to vacate a previous order it had entered granting the transfer to a tribal court and instead retain jurisdiction over the case before the transfer had been accepted by the tribal court.[38] In doing so, we likened the transfer order to an offer to the tribal court that the juvenile court had the option to revoke prior to the tribal court's acceptance.[39]

We find this reasoning from *In re Interest of C.W. et al.* to further illustrate why the transfer order here is conditional. Although § 43-1504(2) speaks to how the tribal court could have subsequently declined the juvenile court's transfer order, *In re Interest of C.W. et al.* demonstrates that the juvenile court could also revoke its "offer" to transfer the cases to the tribal court before the tribal court accepted the transfer and retain jurisdiction. Such a possibility further renders the transfer order conditional. The State does not challenge the validity of *In re Interest of C.W. et al.* In fact, the State concedes that the juvenile court here could have done as the *In re Interest of C.W. et al.* court did and enter a "conditional

---

[37] *In re Interest of C.W. et al., supra* note 12.

[38] *Id.*

[39] *Id.*

order of transfer."[40] But we disagree with the State that such a conditional order was not indeed entered here.

Looking beyond *In re Interest of C.W. et al.*, the State asserts that in Nebraska, "[o]rders of a juvenile court deciding a motion to transfer to tribal court[s] have generally been regarded as final orders."[41] To the contrary, Nebraska courts have previously only found, either explicitly or implicitly, that an order *denying* a parent's or tribe's request to transfer jurisdiction to a tribal court was a final order that the parent or tribe could appeal.[42] Nebraska courts have never directly held that an order, like the one here, *granting* a parent's or tribe's request to transfer jurisdiction to a tribal court was a final order from which the State could appeal.

### (c) State Effectively Agreed Transfer Order Was Conditional

We also observe that the State effectively agreed that the transfer order was conditional at the January 10, 2023, hearing wherein it and the Tribe discussed the procedure set

---

[40] Objection of appellant to motion for summary dismissal at 2.

[41] *Id.*

[42] See, e.g., *In re Interest of Tavian B., supra* note 10; *In re Interest of Zylena R. & Adrionna R., supra* note 12; *In re Interest of Jayden D. & Dayten J.*, 21 Neb. App. 666, 842 N.W.2d 199 (2014); *In re Interest of Melaya F. & Melysse F.*, 19 Neb. App. 235, 810 N.W.2d 429 (2011); *In re Interest of Leslie S. et al.*, 17 Neb. App. 828, 770 N.W.2d 678 (2009), *abrogated on other grounds, In re Interest of Zylena R. & Adrionna R., supra* note 12; *In re Interest of Lawrence H.*, 16 Neb. App. 246, 743 N.W.2d 91 (2007); *In re Interest of Enrique P. et al.*, 14 Neb. App. 453, 709 N.W.2d 676 (2006); *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005). See, also, *In re Interest of Manuel C. & Mateo S., supra* note 13; *In re Interest of Jassenia H.*, 291 Neb. 107, 864 N.W.2d 242 (2015); *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990); *In re Interest of Bird Head*, 213 Neb. 741, 331 N.W.2d 785 (1983); *In re Interest of Shane L. et al.*, 21 Neb. App. 591, 842 N.W.2d 140 (2013); *In re Interest of Louis S. et al.*, 17 Neb. App. 867, 774 N.W.2d 416 (2009), *abrogated on other grounds, In re Interest of Zylena R. & Adrionna R., supra* note 12.

forth in 25 C.F.R. § 23.116. At that time, the Tribe informed
the juvenile court that it was the tribal court's policy to not
accept jurisdiction "until after the [juvenile] court has basi-
cally conditionally granted a motion to transfer" and that
after the juvenile court does so, "the tribal court immediately
informs the [juvenile] court whether it will accept jurisdic-
tion or not." The Tribe then conveyed that the order transfer-
ring jurisdiction would be dependent upon the tribal court's
acceptance. The State responded that if the juvenile court did
decide to transfer the cases, that the tribal court was "entitled
. . . to decide whether to receive it or not," and that the tribal
court was "entitled to make the court where the motion's filed
to make their decision first too. And then if [the tribal court
does not] accept it, it just stays here." We take the State's
statement here to reflect its agreement to a transfer procedure
that is consistent with the framework in NICWA and in *In re
Interest of C.W. et al.* In other words, the State essentially
agreed that if the juvenile court entered a transfer order, it
would be treated as conditional.

Based on the reasons stated, we find that the transfer order
from which the State appeals was a conditional order that could
not qualify as final and appealable. As a result, no appellate
court had jurisdiction to entertain the State's appeals, and the
appeals must be dismissed.

We understand the State's concern that its appeals of the
transfer order were the "only recourse"[43] and "only oppor-
tunity for further review" of the juvenile court's decision to
transfer the cases to the tribal court.[44] However, insofar as our
determination that the transfer order was conditional and not
appealable was predicated in part on the fact that at the time
the State's appeals were initiated, it was unknown whether
the tribal court would decline the transfer, we observe that

---

[43] Objection of appellant to motion for summary dismissal at 4.

[44] Brief for appellant in support of petition for further review at 7 (emphasis
omitted).

compliance with the federal regulations and guidelines implementing ICWA could remove such uncertainty about the tribal court's action in future cases.

As the State initially observed at the January 10, 2023, hearing, before effectively abandoning its position, the relevant federal regulations and guidelines call for the State court to contact the tribal court upon receipt of a transfer petition to provide it with the opportunity to determine whether it wishes to decline jurisdiction.[45] In fact, some courts have found that it is reversible error for a juvenile court to rule on a request to transfer to a tribal court without first notifying the tribal court of the proposed transfer and ascertaining whether the tribal court would accept jurisdiction, as is required under the regulations and guidelines.[46] By following this procedure, the juvenile court's order would not be dependent upon some future acceptance by a tribal court and presumably would be final and appealable.

Alternatively, if no acceptance has been received from the tribal court prior to the determination of the motion to transfer, the juvenile court should enter a second order transferring the matter to the tribal court after receipt of acceptance from the tribal court. The State could then request a stay of the juvenile court's order transferring the case to the tribal court as a way of ensuring that the State has an opportunity to contest the juvenile court's decision to transfer the matter.[47]

---

[45] See, 25 C.F.R. § 23.116; U.S. Dept. of Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act F.3 at 47 (Dec. 2016). See, also, *In re Interest of Tavian B., supra* note 10, 292 Neb. at 810, 815, 874 N.W.2d at 461, 463 (finding that Bureau of Indian Affairs guidelines implementing ICWA are nonbinding and do not have force of federal regulations, but are nonetheless "persuasive and instructive" and provide "framework of best practices" for compliance with ICWA).

[46] See, e.g., *In re Shawnda G.*, 247 Wis. 2d 158, 634 N.W.2d 140 (Wis. App. 2001). See, also, *In re J.W.C.*, 363 Mont. 85, 265 P.3d 1265 (2011).

[47] See, e.g., *In re M.M.*, 154 Cal. App. 4th 897, 65 Cal. Rptr. 3d 273 (2007); *In re Cal. E.*, Nos. 4-22-0930, 4-22-0931, 4-22-1053, and 4-22-1054, 2023 WL 4037629 (Ill. App. June 16, 2023).

We are aware that several courts have held that once the tribal court accepts the transfer, the state court loses jurisdiction to enter any subsequent orders.[48] Neither party cited these cases, and we find them factually distinguishable and unpersuasive. Here, although the tribal court accepted jurisdiction, the juvenile court had yet to enter a final order transferring the cases, and as such, the juvenile court did not lose jurisdiction of the matters.

## VI. CONCLUSION

We affirm the Court of Appeals' dismissal of the State's appeals for lack of jurisdiction due to the lack of a final, appealable order.

Affirmed.

---

[48] *J.P. v. State*, 506 P.3d 3 (Alaska 2022); *In re M.M., supra* note 47; *Comanche Indian Tribe of Oklahoma v. Hovis*, 847 F. Supp. 871 (W.D. Okla. 1994), *reversed on other grounds* 53 F.3d 298 (10th Cir. 1995).