Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

In re Interest of Jordon B., a child
under 18 years of age.
State of Nebraska, appellee,
v. Leah B., appellant.

___ N.W.3d ___

Filed June 28, 2024.    No. S-23-618.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
4. **Constitutional Law: Due Process.** The determination of whether the procedures afforded to an individual comport with the constitutional requirements for procedural due process presents a question of law.
5. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
6. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
7. **Actions: Parties: Standing.** A party must have standing before a court can exercise jurisdiction.
8. **____: ____: ____.** A party has standing to invoke a court's jurisdiction if it has a legal or equitable right, title, or interest in the subject matter of the controversy.
9. **Standing: Jurisdiction: Parties.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant

invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.

10. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order or judgment entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.

11. **Pleadings.** When the title of a filing does not reflect its substance, it is proper for a court to treat a pleading or motion based on its substance rather than its title.

12. **Parental Rights.** A valid relinquishment of parental rights is irrevocable, and a natural parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment.

13. **Parental Rights: Adoption: Appeal and Error.** A natural parent's knowing, intelligent, and voluntary relinquishment of a child for adoption is valid. An appellate court will generally uphold relinquishments absent evidence of threats, coercion, fraud, or duress.

14. **Constitutional Law: Due Process.** The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.

15. **Due Process.** Due process does not guarantee an individual any particular form of state procedure.

16. ____. Due process is flexible and calls for such procedural protections as the particular situation demands.

17. **Due Process: Words and Phrases.** While the concept of due process defies precise definition, it embodies and requires fundamental fairness.

18. **Due Process: Notice.** Due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected.

19. **Constitutional Law: Parental Rights.** The proper starting point for legal analysis when the State involves itself in family relations is always the fundamental constitutional rights of a parent.

20. **Constitutional Law: Parental Rights: Due Process.** The relationship between parent and child is constitutionally protected and cannot be affected without procedural due process.

21. **Parental Rights: Due Process.** The fundamental liberty interest of parents in the care, custody, and control of their children is afforded due process protection and is perhaps the oldest of the fundamental liberty interests recognized by the U.S. Supreme Court.

22. **Appeal and Error.** An appellate court is not obligated to engage in an
analysis that is not necessary to adjudicate the case and controversy
before it.

Appeal from the County Court for Dodge County, Thomas J.
Klein, Judge. Reversed and remanded for further proceedings.

Douglas Peterson and Joel Bacon, of Keating, O'Gara,
Nedved & Peter, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Leslie E. Remus
for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

A mother appeals from the order of the county court for
Dodge County, Nebraska, sitting as a juvenile court, denying
her challenge to the validity of her relinquishment of paren-
tal rights to her child. Because the juvenile court denied the
motion without providing the mother with a meaningful hear-
ing, we reverse, and remand for further proceedings consistent
with this opinion.

## BACKGROUND

Jordon B. was removed from the care of his natural mother,
Leah B., and placed into the temporary custody of the Nebraska
Department of Health and Human Services (DHHS) shortly
after he was born in 2020. The juvenile court appointed Leah
an attorney several days after Jordon was removed, and Jordon
was then adjudicated as a juvenile within the meaning of the
Nebraska Juvenile Code.

After Jordon's removal, he was in foster care with relatives
over the next several years. Various proceedings occurred
within that time that are generally not relevant to this appeal.

However, the second foster family's challenge of Jordon's change of placement to a third family was the subject of an appeal that led to our opinion in *In re Interest of Jordon B.*[1] Following that opinion, Leah relinquished her parental rights to Jordon. That relinquishment is the primary subject of this appeal.

## RELINQUISHMENT OF PARENTAL RIGHTS

Leah relinquished her parental rights to Jordon on November 29, 2022, by completing and signing a DHHS form titled "Relinquishment of Child by Parent." The relinquishment was witnessed by one person and notarized by Leah's court-appointed attorney, who attested at the bottom of the form that Leah "executed the foregoing relinquishment and acknowledged the same to be a voluntary act and deed." On January 9, 2023, DHHS issued Leah a "Relinquishment Acceptance Letter," confirming that Leah had voluntarily relinquished her parental rights to Jordon on November 29, 2022, in the presence of her attorney and that all documents were explained to her by a DHHS representative. The letter stated that acceptance of the relinquishment was effective from that date.

## MOTION FOR ADMISSION OF EXHIBITS AND TERMINATION ORDER

Following DHHS' acceptance of Leah's relinquishment, the State filed a "Motion for Admission of Exhibits & Issue [of] Termination Order." Therein, the State alleged that Leah "knowingly, intelligently, and voluntarily relinquished [her] rights to [Jordon] in the presence of an attorney" and that the relinquishment was delivered to DHHS. The motion further alleged that DHHS "accepted full responsibility for the minor child's care and sent written notification of such in a letter" pursuant to Neb. Rev. Stat. § 43-106.01 (Reissue 2016).

---

[1] *In re Interest of Jordon B.*, 312 Neb. 827, 981 N.W.2d 242 (2022).

The State attached the relinquishment and acceptance letter to the motion and stated that due to Leah's relinquishment "by written instrument and acceptance of the relinquishment by [DHHS] extinguishing the parental rights of the parents, it is appropriate for this court to issue an Order of Termination of Parental Rights by Relinquishment of Leah . . . effective the date of the signed relinquishment." The State further requested the court to "admit the relinquishment documents as exhibits into the juvenile court record and issue the appropriate order in furtherance of the court ordered permanency goal of adoption." The State proposed that the juvenile court take up the matter at the next scheduled hearing.

A hearing on the State's "Motion for Admission of Exhibits & Issue [of] Termination Order" was held in April 2023, which hearing Leah and her court-appointed attorney did not attend. During the hearing, a copy of Leah's signed relinquishment and DHHS' acceptance of the same were offered by the State and received as evidence. Based on those exhibits, the court stated that it "[would] accept the relinquishment of [Leah] and enter an order accordingly terminating [her] rights to Jordon."

Later that day, the juvenile court entered a journal entry and order reiterating that Leah's parental rights to Jordon were ordered relinquished. The order went on to state that the "[c]ourt terminates the mother[']s parental rights, pursuant to the relinquishment." Leah's court-appointed attorney was ordered withdrawn from the case.

Several days later, the juvenile court issued another written order, again terminating Leah's parental rights. The order stated:

> The Court finds by clear and convincing evidence that the mother, [Leah], did voluntarily, knowingly, and intelligently execute the relinquishment of her parental rights. The Court hereby accepts the relinquishment as valid, and the Court maintains jurisdiction of [Jordon].
>
> . . . .

. . . The parental rights are hereby terminated between [Jordon] and his mother, [Leah].

"Motion to Rescind" Termination Order

In May 2023, Leah filed a pro se "Motion to Rescind Order Terminating . . . Parental Rights." Therein, Leah moved to rescind the termination order, generally alleging that she signed the relinquishment involuntarily and under duress and that she was developmentally disabled and should have been appointed a guardian ad litem. The substance of Leah's motion and the specific allegations she made regarding the relinquishment are set forth below in our analysis of the parties' arguments on appeal.

The juvenile court set the motion for hearing on May 31, 2023. Leah appeared pro se at that hearing. After the juvenile court addressed other matters involving the case, it turned to Leah's motion, and the following exchange took place.

> THE COURT: Alright. The Court also has a pro se Motion which was filed by the biological mother in this matter requesting to Rescind Order terminating parental rights. Is she present in the courtroom today?
>
> [Leah]: Yes.
>
> THE COURT: Come forward. Alright. . . . [A]nything you want to add?
>
> [Leah]: I was — would like to rescind my parental rights due to the fact I felt . . . guilted into giving up my rights to my two year old son Jordon. I felt like I was being threatened and . . . I wasn't able to do any of that on my own. I felt . . . pressured into doing it . . . . I would like to have my rights back cause I want my son to be with his older brothers.
>
> THE COURT: Alright. [DHHS]?

DHHS and the State proceeded to raise arguments regarding why Leah's motion should be denied that are similar to those raised on appeal. The court then orally denied Leah's motion and stated that it would enter a written order accordingly.

The juvenile court subsequently issued a journal entry and order denying what it construed to be Leah's motion to rescind the termination order. It later issued a written order explaining its reasoning. The second order stated that "based on the record before the Court, the Court has no evidence . . . to demonstrate that [Leah] was under any 'duress' when she signed and executed her Voluntary Relinquishment." The court further stated that Leah's allegations of duress were directed at her and Jordon's family members rather than the State or DHHS and that there were no allegations that the State or DHHS influenced her or placed her under any duress to sign the relinquishment. The court noted that the relinquishment Leah signed acknowledged that she did so voluntarily and that she signed the relinquishment in the presence of her then-appointed attorney. The court thus found the relinquishment was "in proper form and . . . validly executed."

In addition, the court found that it could not consider Leah's motion as a "Motion to Alter or Amend" because the motion was not filed within 10 days of the court's order terminating her parental rights, as is required by Neb. Rev. Stat. § 25-1329 (Reissue 2016). Therefore, the court instead construed the motion as a "Motion to Vacate the Order Terminating [Leah's] Parental Rights." The court then reiterated that based on the evidence before it, it could not find that Leah signed the relinquishment under duress, and it denied Leah's motion.

The court also found that Leah lacked standing to file her motion, reasoning that because she relinquished her parental rights in November 2022, she was not a party to the action at the time she filed her motion challenging the termination order.

Leah timely appealed, and we moved the matter to our docket.[2]

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

Leah assigns, consolidated and restated, that the juvenile court erred in (1) determining that she lacked standing to file her motion challenging the validity of the relinquishment of her parental rights; (2) denying her motion on the merits; and (3) not affording her due process by (a) ruling on the motion without providing reasonable notice of the relevant hearing, (b) denying the motion without providing her with a reasonable opportunity to be heard and a meaningful evidentiary hearing, and (c) ruling on the motion without appointing her a guardian ad litem and an attorney.

## STANDARD OF REVIEW

[1,2] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court.[3] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[4]

[3] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[5]

[4,5] The determination of whether the procedures afforded to an individual comport with the constitutional requirements for procedural due process presents a question of law.[6] An appellate court independently reviews questions of law decided by a lower court.[7]

---

[3] *Zeiler v. Reifschneider*, 315 Neb. 880, 1 N.W.3d 880 (2024).

[4] *In re Change of Name of Druckenmiller, ante* p. 807, ___ N.W.3d ___ (2024).

[5] *In re Interest of Jeovani H., ante* p. 723, 6 N.W.3d 539 (2024).

[6] *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023).

[7] *In re Change of Name of Druckenmiller, supra* note 4.

## ANALYSIS

This appeal raises issues regarding Leah's challenge to the validity of the relinquishment of her parental rights and her opportunity to be heard on that challenge. We resolve those issues in Leah's favor in our analysis below after we first dispose of the State's contention regarding jurisdiction, which parallels the juvenile court's conclusion regarding standing.

### Jurisdiction and Standing

[6-9] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[8] A party must have standing before a court can exercise jurisdiction.[9] Generally, a party has standing to invoke a court's jurisdiction if it has a legal or equitable right, title, or interest in the subject matter of the controversy.[10] Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.[11]

[10] In addition, for an appellate court to acquire jurisdiction of an appeal, there must be a final order or judgment entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.[12]

Leah contends that the juvenile court erred when it determined that she lacked standing to bring her motion. The State counters that we lack jurisdiction to hear this appeal because after Leah relinquished her parental rights, she was no longer Jordon's parent, and, as a result, the juvenile court's orders

---

[8] *In re Interest of Ricardo T. et al.*, 315 Neb. 718, 999 N.W.2d 562 (2024).

[9] *In re Application A-19594*, 315 Neb. 311, 995 N.W.2d 655 (2023).

[10] *Zeiler, supra* note 3.

[11] *In re Application A-19594, supra* note 9.

[12] *In re Interest of Ricardo T. et al., supra* note 8.

terminating her parental rights and denying her motion did not affect a substantial right. As such, the State contends that neither the order terminating her parental rights nor the order denying her motion was final and appealable.[13] The juvenile court similarly concluded that Leah did not have standing to file her motion because after she relinquished her parental rights, she was no longer a party to the case.

We find that Leah's argument has merit, while the State's does not. Both the claim that we lack jurisdiction and that Leah lacks standing are premised on the failure to construe Leah's motion as a motion challenging the validity of her relinquishment, rather than a motion to revoke the relinquishment or to rescind or vacate the court's order "terminating" her parental rights. For the reasons set forth below, we find that Leah's motion was a challenge to the validity of the relinquishment of her parental rights. Such determination is dispositive of the State's argument that we lack appellate jurisdiction over this appeal, as well as Leah's assignment of error related to the juvenile court's conclusion that she lacked standing to file her motion.

[11] The parties do not dispute that a motion challenging the validity of a relinquishment of parental rights is distinct from a motion requesting a court to rescind or vacate an order terminating parental rights based on a validly executed relinquishment. But the State contends that we should treat Leah's motion as a motion to rescind the termination order because it was titled as a "Motion to Rescind Order Terminating [Leah's] Parental Rights" and requested that same relief in the opening line of the body of the motion. The juvenile court's order denying Leah's motion similarly characterized it as a "Motion to Vacate the Order Terminating her Parental Rights."[14] However, when the title of a filing does not reflect

---

[13] See Neb. Rev. Stat. § 25-1902(1)(b) (Cum. Supp. 2022).

[14] See § 25-1329.

its substance, it is proper for a court to treat a pleading or motion based on its substance rather than its title.[15]

As Leah asserts, her motion "raised a new claim that sought relief separate and distinct from the [c]ourt's [o]rder terminating parental rights" and "[it] challeng[ed] the voluntariness of her relinquishment."[16] Specifically, the motion alleged that Leah "signed the relinquishment documents under duress" and that Jordon's father, grandmother, and a cousin who was Jordon's prospective adoptive mother at the time "all ganged up on [her] and threatened [her] if [she] did not sign the relinquishment papers." The motion further alleged that the same cousin told her that if she did not sign the relinquishment, she "would never see Jordon again, no pictures, no videos, no updates." Jordon's father and grandmother also allegedly "threatened to kill [Leah]," "verbally and physically abused [her]" for years, threatened to force her out of her apartment, and harassed her "constantly."

Leah went on to allege that she "was terrified of what they would do to [her] if [she] didn't sign, and that nobody would believe [her] if [she] told them about the threats and abuse." She alleged that she "was coerced and threatened into having Jordon placed" in a different home by Jordon's family members and his guardian ad litem. The motion also alleged that Leah was "developmentally disabled with cognitive issues and . . . [t]he entire state team knew of [her] disability . . . and took advantage of [her] disability, by manipulating and lying to [her]." The motion concluded by stating that she signed the relinquishment "under great duress" and "feared for [her] safety."

It is apparent from these allegations that the body of Leah's motion was a substantive challenge to the validity of the

---

[15] *In re Guardianship & Conservatorship of Maronica B.*, 314 Neb. 597, 992 N.W.2d 457 (2023).

[16] Brief for appellant at 14, 15.

relinquishment of her parental rights and not a challenge to the juvenile court's order terminating her parental rights. Leah alleged that she signed the relinquishment document involuntarily, under threat, coercion, duress, or some combination of the same, or that it was not signed knowingly, intelligently, and voluntarily. It is thus clear that Leah sought to "rescind" the termination order because the relinquishment was invalidly executed.

When the juvenile court held a hearing on the State's motion to terminate Leah's parental rights and then issued the subsequent order "terminat[ing Leah's] parental rights, pursuant to the relinquishment," the court failed to recognize the distinction between termination proceedings and relinquishment proceedings. In doing so, the court failed to heed the cautions we have given regarding its limited statutory authority.[17]

[12,13] Under Nebraska statutes, a voluntary relinquishment is effective upon a parent's execution of a written instrument and DHHS' written acceptance for the child.[18] We have also stated that a valid relinquishment of parental rights is irrevocable, and a natural parent who relinquishes his or her rights to a child by a valid written instrument gives up all rights to the child at the time of the relinquishment.[19] A natural parent's knowing, intelligent, and voluntary relinquishment of a child for adoption is valid. We will generally uphold relinquishments absent evidence of threats, coercion, fraud, or duress.[20] As our prior decisions make clear, a parent's relinquishment can only be accepted, and thus effective and

---

[17] See *In re Interest of Donald B. & Devin B.*, 304 Neb. 239, 933 N.W.2d 864 (2019).

[18] See, *id.*; Neb. Rev. Stat. §§ 43-104(2) (Cum. Supp. 2022) and 43-106.01 (Reissue 2016).

[19] *Jesse B. v. Tylee H.*, 293 Neb. 973, 883 N.W.2d 1 (2016).

[20] *Id.*

irrevocable, if the relinquishment is valid. A valid relinquishment, in turn, is conditioned upon it being executed knowingly, intelligently, voluntarily, and in the absence of threats, coercion, fraud, or duress. A parent can challenge the validity of a relinquishment when those conditions have allegedly not been satisfied.

Because Leah's motion called into question the validity and voluntariness of the relinquishment, she had standing to file the motion.[21] And because the motion was denied, we have jurisdiction to entertain this appeal.[22] We reject each of the State's arguments suggesting the contrary.

Even if Leah's relinquishment was valid and her motion was not a challenge to the validity of the relinquishment, the State's motion to terminate Leah's parental rights would have still been unnecessary upon the validly executed relinquishment and, as such, the court's order terminating Leah's parental rights was needless. Any challenge to that court order would also be of no value.

## Due Process Denied in Lack
### of Meaningful Hearing

Having determined that Leah's motion sought to invalidate the relinquishment, we now turn to whether she was entitled to, and afforded, due process in the proceedings related to that motion. Leah argues that the juvenile court did not afford her due process when it denied her motion without providing her with a reasonable opportunity to be heard and a meaningful evidentiary hearing. We agree. The State's arguments to the contrary are premised, in large part, on misconstruing Leah's motion as a motion to rescind the order terminating her parental rights.

---

[21] See, *Zeiler, supra* note 3; *In re Application A-19594, supra* note 9.

[22] See, *In re Interest of Ricardo T. et al., supra* note 8; § 25-1902(1)(b).

[14-18] The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.[23] Due process does not guarantee an individual any particular form of state procedure.[24] It is flexible and calls for such procedural protections as the particular situation demands.[25] While the concept of due process defies precise definition, it embodies and requires "fundamental fairness,"[26] and its clear central meaning is that "[p]arties whose rights are to be affected are entitled to be heard."[27] Broadly speaking, due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected.[28]

More specifically, procedural due process generally requires parties whose rights are to be affected by a proceeding to be given, at a minimum, timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.[29]

---

[23] See *State v. Matteson*, 313 Neb. 435, 985 N.W.2d 1 (2023). See, also, U.S. Const. amend. XIV, § 1; Neb. Const. art. I, § 3.

[24] *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

[25] *In re Interest of A.A. et al.*, 307 Neb. 817, 951 N.W.2d 144 (2020), *supplemented by* 308 Neb. 749, 957 N.W.2d 138 (2021).

[26] *Diedra T. v. Justina R.*, 313 Neb. 417, 430, 984 N.W.2d 312, 323 (2023).

[27] *In re Interest of L.V.*, 240 Neb. 404, 413, 482 N.W.2d 250, 257 (1992) (internal quotation marks omitted).

[28] See *State v. Blocher*, 313 Neb. 699, 986 N.W.2d 275 (2023).

[29] *Diedra T., supra* note 26. See, also, *In re Interest of Joseph S. et al.*, 288 Neb. 463, 849 N.W.2d 468 (2014) (noting that these requirements are not exclusive).

We have clarified that the opportunity to be heard must be "at a meaningful time and in a meaningful manner."[30]

Turning to the present case, we must first determine whether Leah asserts an interest that is protected by the Due Process Clause, and if so, whether she was deprived of that interest without sufficient process.[31]

[19-21] The proper starting point for legal analysis when the State involves itself in family relations is always the fundamental constitutional rights of a parent.[32] The relationship between parent and child is constitutionally protected and cannot be affected without procedural due process.[33] The fundamental liberty interest of parents in the care, custody, and control of their children is afforded due process protection and is perhaps the oldest of the fundamental liberty interests recognized by the U.S. Supreme Court.[34] We have thus repeatedly held that procedural due process is applicable to proceedings for the termination of parental rights.[35] A meaningful hearing, where there was an opportunity for evidence to be presented and testimony from witnesses to be adduced, has been afforded by Nebraska courts to parents challenging the

---

[30] *In re Interest of Taeson D.*, 305 Neb. 279, 285, 939 N.W.2d 832, 837 (2020) (internal quotation marks omitted).

[31] See *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019).

[32] *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 910 N.W.2d 789 (2018).

[33] See *Davis v. Moats*, 308 Neb. 757, 956 N.W.2d 682 (2021).

[34] *In re Interest of Kane L. & Carter L., supra* note 32.

[35] See, e.g., *In re Interest of Taeson D., supra* note 30; *In re Interest of Joseph S. et al., supra* note 29; *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010); *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004); *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003); *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999); *In re Interest of L.V., supra* note 27.

validity of their relinquishment of parental rights in numerous cases.[36]

Because Leah's motion alleged that she relinquished her parental rights to Jordon involuntarily, she asserted that she was deprived of her fundamental liberty interest in raising Jordon. Although we have made clear that the mechanisms and effects of the procedures for termination of parental rights and the procedures for relinquishment of parental rights are statutorily different and should be treated as such, the practical result of both procedures extinguishes a parent's right to their child.[37] Leah's parental relationship with Jordon and her care, custody, and control of him was thus clearly affected when she signed the relinquishment of her parental rights. Because Leah's motion sought to invalidate and void that relinquishment, she was entitled to be heard on that motion. However, the record before us shows that Leah was not heard in a meaningful manner, and the process she was afforded by the juvenile court was not fundamentally fair.

---

[36] See, e.g., *Maria T. v. Jeremy S.*, 300 Neb. 563, 915 N.W.2d 441 (2018); *Monty S. & Teresa S. v. Jason W. & Rebecca W.*, 290 Neb. 1048, 863 N.W.2d 484 (2015); *Hohndorf v. Watson*, 240 Neb. 368, 482 N.W.2d 241 (1992); *Yopp v. Batt*, 237 Neb. 779, 467 N.W.2d 868 (1991); *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990); *D.S. v. United Catholic Soc. Servs.*, 227 Neb. 654, 419 N.W.2d 531 (1988); *Gaughan v. Gilliam*, 224 Neb. 836, 401 N.W.2d 687 (1987); *Auman v. Toomey*, 220 Neb. 70, 368 N.W.2d 459 (1985); *Gray v. Maxwell*, 206 Neb. 385, 293 N.W.2d 90 (1980); *Kane v. United Catholic Social Services*, 187 Neb. 467, 191 N.W.2d 824 (1971); *Batt v. Nebraska Children's Home Society*, 185 Neb. 124, 174 N.W.2d 88 (1970). See, also, *In re Interest of Zoey S.*, 22 Neb. App. 371, 853 N.W.2d 225 (2014). Cf. *In re Interest of Jade S.*, No. A-09-344, 2009 WL 3161633 at *3 (Neb. App. Sept. 29, 2009) (selected for posting to court website) ("[mother's] motion includes allegations that are tantamount to asserting that her relinquishment of parental rights was procured by coercion or fraud and was not signed intelligently and voluntarily. These assertions cannot be resolved without an evidentiary hearing").

[37] See *In re Interest of Donald B. & Devin B., supra* note 17.

At the relevant hearing in this case, the juvenile court merely asked Leah if there was "anything [she] want[ed] to add" to what she said in her motion. In a single, short statement, Leah articulated concerns about the relinquishment similar to those set forth in the motion, specifically saying that she felt threatened and pressured into giving up her rights. Despite this fact, the court denied her motion, stating that "based on the record before the Court, the Court has no evidence . . . to demonstrate that [Leah] was under any 'duress' when she signed and executed her Voluntary Relinquishment." It instead found that Leah's relinquishment was "validly executed."

The court denied Leah procedural due process in making such determinations without providing her with a meaningful hearing and opportunity to present evidence in support of her motion.

## Remaining Assignments of Error

[22] We need not address Leah's remaining assignments of error, as we find her due process argument dispositive. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[38]

## CONCLUSION

Because Leah was not provided a meaningful hearing on her motion challenging the validity of the relinquishment of her parental rights, we reverse the court's order denying her motion and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings

---

[38] *Nore Electric v. S & H Holdings, ante* p. 197, 3 N.W.3d 895 (2024).