IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ADALYN H. & KENLEY H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ADALYN H. AND KENLEY H., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JEREMY H., APPELLANT.

Filed March 3, 2026.    No. A-25-455.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellant.

Ellie K. Harris, Deputy Lancaster County Attorney, for appellee State of Nebraska.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

PIRTLE, Judge.

INTRODUCTION

Jeremy H. appeals from the order of the separate juvenile court of Lancaster County terminating his parental rights to his minor children. Upon our de novo review, we affirm the juvenile court's order.

BACKGROUND

Jeremy is the father of Adalyn H., born in July 2015, and Kenley H., born in December 2018.

On June 2, 2023, the State filed a petition that alleged Adalyn and Kenley were juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The petition alleged that on or about June 1, 2023, Jeremy was driving under the influence of alcohol while Adalyn and Kenley

- 1 -

were in the vehicle. The petition further alleged that Jeremy had previous juvenile court cases in which the adjudicated issues related to domestic violence and substance abuse. The petition also alleged that in each case, a rehabilitative plan was implemented by the juvenile court. In those cases, the court found that Jeremy corrected the adjudicated issues, and the said juvenile was placed in his care. Lastly, the petition alleged the actions of Jeremy placed the juveniles at risk of harm.

The State also filed a motion for emergency temporary custody of Adalyn and Kenley. The affidavit in support of the motion alleged that Jeremy was arrested by law enforcement after a traffic stop. At the time of the arrest, the juveniles were in the vehicle with their father. The father was arrested for felony child abuse, DUI third offense, and DUI with passenger(s) under 16, which placed the juveniles at imminent risk of harm. On June 2, 2023, the court issued an ex parte order for emergency temporary custody, and the children were placed in the custody of the Department of Health and Human Services (DHHS).

On August 10, 2023, the juvenile court adjudicated Adalyn and Kenley under § 43-247(3)(a).

On October 5, 2023, following a disposition hearing, the court found that reasonable efforts had been made to return Adalyn and Kenley home, but to do so would be contrary to the health, safety, and welfare of the juveniles and, therefore, it was necessary and in the best interest of the juveniles to remain in the legal custody of DHHS in an out-of-home placement.

Jeremy was ordered to abstain from alcohol and other controlled substances, to submit to random drug and alcohol testing, to cooperate with the recommendations of a substance abuse assessment, to cooperate with a full psychological evaluation assessment, and to cooperate with a parenting assessment. Jeremy was also ordered to have supervised parenting time, ordered to report any law enforcement contact to his DHHS case manager, to not use physical punishment or yell at the juveniles during his parenting time, and to participate in parenting education courses.

On July 18, 2024, at a review hearing, Adalyn and Kenley's guardian ad litem expressed concerns that Jeremy was not participating in follow-up services, including therapy and case management with CenterPointe. The court noted, based on the evidence presented, that it was apparent Jeremy wanted the children to return home, but he continued to believe he did nothing wrong and that the children should not have been removed. The court also noted that it had been about a year and a month since the children were removed from the home and Jeremy still failed to recognize why the case was filed. The court modified the permanency plan, making adoption the primary goal, with reunification as a concurrent goal.

At a review hearing on October 16, 2024, Lisa Pollard, a case manager for DHHS, testified that Jeremy was not very willing to engage in offered services and did not feel like services were needed. Pollard also expressed concern that Jeremy lacked accountability, that he had no behavior management strategy, that he had not completed individual therapy, and that he did not show up for additional visits set up by DHHS.

On November 15, 2024, the State filed a motion for termination of parental rights pursuant to Neb. Rev. Stat. § 43-292 (Reissue 2016). The State alleged three statutory grounds for termination existed. Pursuant to § 43-292(2), it alleged that Jeremy had substantially and continuously neglected and refused to give the juveniles necessary parental care and protection. Based on § 43-292(6), the motion alleged that reasonable efforts to preserve and reunify the family

had failed to correct the conditions leading to the children's removal. The motion also alleged, pursuant to § 43-292(7), that the juveniles had been in an out-of-home placement for 15 or more of the most recent 22 months. The State also alleged that it would be in the best interests of Adalyn and Kenley to terminate Jeremy's parental rights.

On May 19, 2025 the trial on the motion began, and Sarah Kirkwood, the therapist for the children testified. Kirkwood testified that when Adalyn had sessions with Jeremy, he struggled to help Adalyn regulate emotional moments and he would be dismissive to the point where it became negative having Jeremy involved in the sessions. Kirkwood experienced similar problems with Jeremy during Kenley's therapy sessions. Kirkwood said she was also present for multiple team meetings for the family, where she noted that Jeremy was verbally aggressive and blamed the team members for the things that had happened.

Pollard testified that Jeremy was ordered to complete certain requirements to work toward reunification with Adalyn and Kenley, but he had not completed all these requirements. Pollard testified that he was ordered to engage in drug testing and ordered not to use or possess substances, but he had not complied with that court order. Pollard said that he routinely missed tests, and he had tested positive on tests in January 2025. Jeremy tested positive for alcohol residue on December 29, 2024; January 3, 2025; and February 11, 2025.

Pollard stated that Jeremy minimized the significance of what happened, minimized his continued alcohol use, and minimized the need for follow-up support and services to keep him sober. Pollard testified that Jeremy was still not in individual counseling, and he had not completed his psychological exam. Pollard said Jeremy cooperated with family support at times, but at other times he "exploded" in inappropriate ways, such as yelling at or treating family support workers poorly. One family support worker asked to be removed from the case due to Jeremy's behavior. Pollard testified that Jeremy had been cited for speeding twice since the beginning of the case. Jeremy received one of these citations when he was going 63 miles per hour in a 35 miles per hour zone. Jeremy failed to report this law enforcement contact to Pollard.

Pollard said that she believed it was in the best interests of Adalyn and Kenley that Jeremy completes all his recommended services. Pollard said that Adalyn and Kenley need permanency, but that it would not be safe to return the children to Jeremy. Pollard noted that permanency with Jeremy could not be achieved in the near future as there were still a lot of services Jeremy would need to complete and that the juveniles had already been in the foster care system for two years.

Jeremy testified that he was actively participating in "SMART Recovery," a recovery program. Jeremy said he consistently participated in family meetings and explained that he became angry with team members because he was removed from "IOP," a substance abuse treatment program. He became angry with team members because they were telling him he was not taking accountability. Jeremy said he had missed drug tests, and when asked why, he stated, "Yeah, it's just a lack of communication or I know one time I slept in or something." Jeremy testified he had stayed sober since "New Year's."

Following trial, the court found Jeremy had made progress in terms of attending visitation and completing some programs, but he had not rehabilitated himself or corrected the issues that led to the children being adjudicated. The court specifically stated that Jeremy still needed to address his emotional regulation and his drinking. The court noted that even though he finished his substance abuse treatment program during this case, he continued to drink alcohol. The court

further noted Jeremy admitted to drinking alcohol on New Year's Eve but was not honest when he testified about his sobriety date because he tested positive for alcohol on February 11, 2025. The court surmised that Jeremy argued about why he should be required to engage in services, rather than engaging in the services ordered by the court. The court determined that the statutory allegations set forth in the motion for termination of parental rights, § 42-292(2), (6), and (7), were true by clear and convincing evidence. The court also found that it was in the children's best interests to terminate Jeremy's parental rights.

The court terminated the parental rights of Jeremy. Jeremy now appeals.

## ASSIGNMENT OF ERROR

Jeremy assigns that the juvenile court erred in finding that terminating his parental rights was in the children's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Jordan B.*, 316 Neb. 974, 7 N.W.3d 894 (2024).

## ANALYSIS

Termination of parental rights is a two-part inquiry. The juvenile court must find clear and convincing evidence that one of the statutory grounds under § 43-292 is met, and second, that termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

*Statutory Grounds for Termination.*

Jeremy does not assign that the juvenile court erred in finding statutory grounds existed under § 43-292(2), (6), and (7). However, for the sake of completeness, we set out how § 43-292(7) was met.

Subsection (7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). In the case of termination of parental rights based on § 43-292(7), the protection afforded the parent's right comes in the best interests' step of the analysis. *In re Interest of Becka P. et al., supra.*

The evidence demonstrated that Adalyn and Kenley were placed in legal custody of DHHS and in an out-of-home placement on June 2, 2023, and have continuously remained in an out-of-home placement. At the time the State filed the motion to terminate, November 15, 2024, Adalyn and Kenley had been placed outside the home for 17 months out of the most recent 22 months. Therefore, we determine that the State provided clear and convincing evidence that the children had been in an out-of-home placement for 15 or more months of the most recent 22 months as required by § 43-292(7).

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate

- 4 -

court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.* Because the State presented clear and convincing evidence that the children had been in an out-of-home placement for 15 or more months of the most recent 22 months, we need not address the other statutory grounds, § 43-292(2) and (6).

*Best Interests.*

Jeremy challenges the finding that termination of his parental rights was in Adalyn and Kenley's best interests. Jeremy argues that the State failed to prove by clear and convincing evidence that termination was in the best interests of Adalyn and Kenley as he (1) participated in therapy with the children; (2) consistently engaged with, bonded with, and visited his children throughout the case; (3) moved into his own home and had bedrooms and essentials for his children; (4) completed his psychological evaluation; (5) participated in other services such as the substance abuse recovery programs "IOP" and "Smart Recover;" and (6) loves his children. He also argues that DHHS failed to follow-up to verify the services that Jeremy was involved with, and it failed to increase his visits.

Generally, a child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proven that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which is prevented or will probably prevent performance of a reasonable parental obligation in child rearing, and which caused, or probably will result in, detriment to the child's well-being. *Id.* The best interests and parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id.*

In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

Upon our de novo review, we conclude that the State proved by clear and convincing evidence that terminating Jeremy's parental rights was in Adalyn and Kenley's best interests.

The evidence shows that Jeremy made minimal progress to no progress in complying with his rehabilitative goals, despite having services being continuously offered to him throughout this case.

On June 2, 2023, Jeremy was arrested for his third offense DUI of alcohol with Adalyn and Kenley in the car. Jeremy was going 74 miles per hour on a road where the speed limit was 40 miles per hour with a BAC of 0.128. As a result, Adalyn and Kenley were removed from his care, and Jeremy was ordered to not use or possess drugs or alcohol or other mind-altering substances, except as prescribed, and that he needed to submit to random testing as arranged by DHHS. He was also ordered to follow the recommendations of his substance abuse evaluation, among other requirements.

Jeremy did not cooperate with the recommendations of his substance abuse evaluation and did not follow the order of the juvenile court. Jeremy admitted to drinking alcohol in 2024 on New Year's Eve, and he tested positive for alcohol as recently as February 11, 2025, which indicates

that he was dishonest during his testimony about his most recent sobriety date, and that he did not follow the court's order. Jeremy was not in counseling at the time of trial despite his psychological evaluation recommending long-term counseling. Jeremy also failed to report to DHHS his contact with law enforcement. He received another citation for speeding, for driving 63 miles per hour in a 35 miles per hour zone.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Further, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or made to await uncertain parental maturity. *Id.* Jeremy has been unable to put himself in a position to properly parent his children. We recognize that while Jeremy has made some progress toward his goal of rehabilitation, there is still much progress that needs to be made before Jeremy could be trusted with Adalyn and Kenley's care and custody.

Adalyn and Kenley deserve permanency. Jeremy's failure to comply with the court-ordered rehabilitation plan defeated his chance of being reunified with them. Adalyn and Kenley have been suspended in foster care since June 2023, and they deserve stability and security in their lives. They should not languish in foster care awaiting uncertain parental maturity. Accordingly, based on our de novo review of the evidence, there was clear and convincing evidence to show that Jeremy was unfit and that the termination of Jeremy's parental rights was in Adalyn and Kenley's best interests.

## CONCLUSION

Upon our de novo review of the record, we conclude a statutory ground for termination of Jeremy's parental rights to Adalyn and Kenley was proved by clear and convincing evidence under § 43-292(7). The State also proved by clear and convincing evidence that the termination of Jeremy's parental rights was in the children's best interests. Accordingly, the juvenile court's order is affirmed.

AFFIRMED.