Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/27/2026 08:08 AM CDT

In re Interest of Joel T. et al., children
under 18 years of age.

State of Nebraska, appellee, v. Oscar
Kazadi Mukoma, appellant.

___ N.W.3d ___

Filed March 27, 2026.    Nos. S-25-096 through S-25-099.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.

2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.

3. **Constitutional Law: Parental Rights.** The proper starting point for legal analysis when the State involves itself in family relations is always the fundamental constitutional rights of a parent.

4. **Constitutional Law: Parental Rights: Due Process.** The relationship between parent and child is constitutionally protected and cannot be affected without procedural due process.

5. **Juvenile Courts: Parental Rights: Final Orders: Appeal and Error.** An order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.

6. **Juvenile Courts: Parental Rights: Appeal and Error.** A juvenile court order imposing a rehabilitation plan affects a parent's substantial right in a special proceeding and is appealable.

7. **Collateral Attack: Jurisdiction.** Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter.

8. **Parental Rights: Proof.** Under Neb. Rev. Stat. § 43-292 (Reissue 2016), it is the State's burden by clear and convincing evidence to show

that there not only exists a statutory basis for termination but that termination is in the best interests of the child.

9. **Parental Rights.** Whereas the statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child.

10. **Constitutional Law: Due Process: Parental Rights: Proof.** The Due Process Clause of the U.S. Constitution would be offended if a state were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness.

11. **Parental Rights: Presumptions: Proof.** There is a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. That presumption can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right.

12. **Parental Rights: Words and Phrases.** Parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being.

13. **Parental Rights.** The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts.

14. ____. When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights.

15. **Parental Rights: Time.** The 15-month condition contained in Neb. Rev. Stat. § 43-292(7) (Reissue 2016) provides a reasonable timetable for parents to rehabilitate themselves.

Appeals from the County Court for York County: C. Jo Petersen, Judge. Affirmed.

Jerrod Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Christopher M. Johnson, Chief Deputy York County Attorney, for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Bergevin, J.

## INTRODUCTION

Oscar Kazadi Mukoma (Appellant) appeals from a juvenile court order that terminated his parental rights to his four children. This case involves separate appeals for the four children who were adjudicated. Appellant argues that the juvenile court deprived him of due process and erred in its determination that termination of his parental rights to the children was in the children's best interests. We affirm.

## BACKGROUND

### Adjudication Phase

Appellant is the natural father of Joel T., Michel T., Tresor T., and Kevin T. (collectively the children). This case began on January 5, 2023, when the children were removed from their mother's residence and placed in emergency custody with the Department of Health and Human Services (DHHS) due to allegations that their mother was physically abusing them.

Following their removal, the State filed petitions against both parents to adjudicate the children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). At a contested adjudication hearing, the juvenile court adjudicated the children within the meaning of § 43-247(3)(a) and continued the matter for disposition as to the mother and Appellant.

### Disposition Phase

At the disposition hearing as to Appellant in June 2023, the juvenile court received a DHHS court report with a case plan into evidence. The court adopted the court report and the case plan and ordered Appellant to comply with the case plan and the recommendations therein. The case plan stated that "[i]t was reported [Appellant] has taken part in physical altercations with the mother [in front] of his children on multiple occasions."

The case plan had a "safety goal" and three "priority goals." The safety goal was for Appellant to "work with DHHS and

his supports to work on his aggression." Completion of this goal would be evidenced by Appellant's participation in a batterers' intervention class that was "directly related to the allegations of domestic violence in the home."

The three priority goals were that Appellant (1) address any mental health concerns (he may have); (2) appropriately parent his children by refraining from any emotional or physical abuse or neglect; and (3) provide appropriate housing, food, clothing, and hygienic care for his children, as well as participate in any therapeutic session or medical appointment deemed necessary.

The case plan recommended the following strategies for Appellant to meet the priority goals: (1) receive any evaluations recommended by the legal parties, (2) follow all recommendations made by any assessment or evaluation he may participate in, (3) participate in some sort of therapeutic service and a parenting class, (4) work with DHHS to communicate any needs he may have, and (5) stay in contact with the children's medical providers and therapists.

At a review hearing in November 2023, the juvenile court noted that Appellant had apparently suffered a medical episode after the June 2023 disposition hearing. The court also noted that Appellant had a criminal case pending and that the district court had ordered a competency evaluation in that matter. The juvenile court continued the review hearing so Appellant's competency to participate in the juvenile proceedings could be determined. The exact medical issue that Appellant suffered is unclear from the record. Throughout the juvenile case, Appellant sometimes asserted that he suffered a stroke and sometimes asserted he suffered a heart attack. He offered limited medical information into evidence to confirm the medical episode.

In December 2023, the district court found Appellant incompetent to stand trial in his criminal case. However, the district court subsequently found Appellant competent in May 2024.

At that time, the juvenile court found Appellant competent to proceed with the disposition proceedings.

TERMINATION PROCEEDINGS

On June 17, 2024, the State filed supplemental petitions to terminate Appellant's parental rights to the children. The State alleged that (1) Appellant had substantially and continuously or repeatedly neglected the children and refused to give the children necessary parental care and protection,[1] (2) Appellant had failed to correct the conditions leading to the determination that the children were as described in § 43-247(3)(a),[2] and/or (3) the children had been in an out-of-home placement for 15 or more months of the most recent 22 months,[3] as well as that (4) termination was in the children's best interests.

On September 10, 2024, the juvenile court held a hearing on the State's supplemental petitions. At the hearing, the State called the family caseworker as a witness, and Appellant testified in his own behalf.

The caseworker worked with the family from September 2023 through the termination proceedings. The caseworker testified that Appellant did not begin seeing a therapist until July or August 2024, after the State filed its petitions to terminate his parental rights. Besides that, Appellant received mental health treatment only when he stayed at a facility between April and May 2024 for the competency evaluation in his criminal case. The caseworker further testified that, around June 2024, Appellant started working with a family support service to work on his parenting skills. However, the caseworker never received proof that Appellant completed a parenting class. The caseworker testified that, outside of these actions, Appellant made no progress toward any of the goals in the case plan.

---

[1]  Neb. Rev. Stat. § 43-292(2) (Reissue 2016).

[2]  § 43-292(6).

[3]  § 43-292(7).

Appellant testified to his recent progress in meeting his goals under the case plan, such as meeting with a therapist and working with a family support service to work on his parenting skills. Appellant testified that he had not seen the children since February 2022, nearly a year before the children were removed from the mother's home. He testified that he had a heart attack in June 2023 and that he could not remember anything after that until October or December 2023. Appellant also testified that he was arrested in August 2024, was in custody on the date of the hearing, and would be in jail until January 2025. Appellant admitted that he violated the district court's no-contact order by contacting the children's mother.

### JUVENILE COURT ORDER

After hearing the evidence, the juvenile court entered an order for each of the State's supplemental petitions. The court addressed Appellant's competency by highlighting the district court's competency determinations in his criminal case. Regarding Appellant's medical episode, the juvenile court found that there was limited evidence concerning the incident, when it happened, or any effect it had on Appellant's day-to-day life.

The juvenile court found that the State proved three statutory bases for termination: (1) Appellant substantially and continuously or repeatedly neglected the children and refused to give the children necessary parental care and protection,[4] (2) reasonable efforts to preserve and reunify the family had failed to correct the conditions leading to the adjudication,[5] and (3) the children had been in out-of-home placement for 15 or more months of the most recent 22 months.[6]

The juvenile court further found that the State proved by clear and convincing evidence that Appellant was an

---

[4] See § 43-292(2).

[5] See § 43-292(6).

[6] See § 43-292(7).

unfit parent and that termination was in the children's best interests.[7] Specifically, the court found that Appellant had not had contact with the children since February 2022, that Appellant's progress toward reaching the case plan goals was "non-existent," and that Appellant was "unable or unwilling to rehabilitate himself . . . within a reasonable time."[8] In this finding, the court referenced Appellant's lack of cooperation with DHHS, lack of compliance with conditions of the case plan, and unwillingness to move forward with the case. The juvenile court ordered that Appellant's parental rights to the children be terminated.

Appellant timely appealed. We removed the cases to our docket on our own motion[9] and consolidated them for briefing and oral argument.

## ASSIGNMENTS OF ERROR

Appellant assigns that the juvenile court erred (1) in conditioning reunification between Appellant and his children on case plan requirements derived from factual allegations that were not properly adjudicated and (2) in finding that termination of Appellant's parental rights was in the best interests of the children.

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[10] When an appeal calls for statutory interpretation or presents questions of law, an appellate court

[7] See *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

[8] See *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020).

[9] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[10] *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023).

must reach an independent, correct conclusion irrespective of the determination made by the court below.[11]

## ANALYSIS

We first address Appellant's assignment of error concerning the case plan recommendations ordered by the juvenile court. Because we find no error, we proceed to consider whether terminating Appellant's parental rights was in the best interests of the children.

### Due Process

Appellant assigns that the juvenile court erred by conditioning reunification between Appellant and his children on case plan requirements derived from factual allegations that were not properly adjudicated. We disagree.

[3,4] The proper starting point for legal analysis when the State involves itself in family relations is always the fundamental constitutional rights of a parent.[12] The relationship between parent and child is constitutionally protected and cannot be affected without procedural due process.[13]

[5-7] An order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.[14] A juvenile court order imposing a rehabilitation plan affects a parent's substantial right in a special proceeding and is appealable.[15] Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter.[16]

---

[11] *Id.*

[12] *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024).

[13] *Id.*

[14] *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

[15] *In re Interest of Mya C. & Sunday C.*, 286 Neb. 1008, 840 N.W.2d 493 (2013).

[16] *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003); *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

Appellant argues that the juvenile court violated his due process rights by ordering him to comply with the case plan recommendations when the case plan relied on unadjudicated domestic violence allegations against him. The State did not address Appellant's first assignment of error in its appellate brief.

We are unpersuaded by Appellant's claim that the juvenile court deprived him of due process. At the disposition hearing, Appellant had an opportunity to object to the court's adoption of the case plan and the recommendations therein but did not. As counsel acknowledged at oral argument, Appellant did not appeal the June 2023 order, which was a final, appealable order. In this appeal, Appellant does not challenge the juvenile court's jurisdiction over the parties or subject matter; he challenges the existence of facts underlying the court's jurisdiction. This argument is a collateral attack on the June 2023 disposition order, which we have previously recognized is impermissible.[17]

## BEST INTERESTS ANALYSIS

Before addressing whether termination of Appellant's parental rights was in the best interests of the children, we note that Appellant concedes the children have been in an out-of-home placement for 15 or more months of the most recent 22 months.[18] He does not dispute that a statutory basis exists for the termination of his parental rights. We agree and find that the State proved the same by clear and convincing evidence.

We next consider whether termination of Appellant's parental rights is in the children's best interests. On our de novo review, we conclude that it is.

[8-10] Under § 43-292, it is the State's burden by clear and convincing evidence to show that there not only exists a statutory basis for termination but that termination is in the

---

[17] See *id.*

[18] See § 43-292(7).

best interests of the child.[19] Whereas the statutory grounds for termination of parental rights are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child.[20] In this regard, we have emphasized that the Due Process Clause of the U.S. Constitution would be offended "'[i]f a [s]tate were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness.'"[21]

[11-13] We apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent.[22] That presumption can only be overcome by a showing that the parent either is unfit to perform the duties imposed by the relationship or has forfeited that right.[23] In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being.[24] The best interests and parental unfitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts.[25]

Appellant argues that he was never granted a "legitimate pathway to reunification with his children."[26] According to Appellant, he was unable to see his children because of the district court's order in the criminal case that he have no contact with the children's mother and because he had an unreasonable rehabilitative plan. Appellant also argues that

[19] *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023).

[20] *Id.*

[21] *Id.* at 640, 992 N.W.2d at 479. See *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978).

[22] *In re Interest of Mateo L. et al., supra* note 7.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Brief for appellant at 20.

his incarceration and health issues during the pendency of the juvenile case do not prove that he was unwilling or unable to improve himself.

The State disagrees. It argues that Appellant's failure to cooperate with DHHS, inability to control his anger, and lack of meaningful relationships with the children prove that Appellant is an unfit parent and that termination of his parental rights is in the children's best interests.

The record establishes that Appellant made little to no progress toward complying with the case plan or meeting its goals during the life of this case. After the initial disposition hearing in June 2023, Appellant did not make any progress toward meeting the case plan goals for 1 year. We recognize that Appellant alleges some of this time was caused by his medical episode. However, Appellant failed to provide sufficient evidence about any medical issues. Additionally, Appellant's behavior, including his August 2024 arrest and subsequent violation of a district court no-contact order during his criminal case, indicates an unwillingness or inability to rehabilitate.[27]

Appellant's minimal progress toward the end of the juvenile case does not outweigh his previous lack of progress with the case plan. The dispositional phase as to Appellant began in June 2023. The only progress Appellant made in the case plan was to begin attending therapy and working with family support services a year into the case. He did not comply with any of the other case plan recommendations that the juvenile court ordered him to follow. Appellant was generally uncooperative with DHHS. He did not participate in a batterers' intervention program, complete a parenting class, undergo a psychological evaluation, or stay in contact with the children's therapists. Appellant's failure to complete any of the goals in the case plan supports termination of his parental rights.

---

[27] See *In re Interest of Leyton C. & Landyn C., supra* note 8.

[14,15] When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights.[28] We have recognized that the 15-month condition contained in § 43-292(7) provides a reasonable timetable for parents to rehabilitate themselves.[29] The children have been in out-of-home placement since January 2023. Appellant has not been in contact with the children since February 2022, nearly a year before this case commenced. Appellant did not begin taking any steps toward meeting the goals in his case plan until a year after the juvenile court ordered it. Even then, his progress was minimal.

Appellant had 17 months between the time the children were removed and the filing of the State's petitions for termination of parental rights to show signs of rehabilitation. During this reasonable period of time, he demonstrated an inability or unwillingness to rehabilitate himself. We find that the State proved by clear and convincing evidence that termination of Appellant's parental rights was in the children's best interests.

## CONCLUSION

The juvenile court did not err by adopting the court report and case plan and ordering Appellant to comply with the case plan recommendations. Additionally, the court did not err in finding a statutory basis for termination of Appellant's parental rights and in finding that termination is in the best interests of the children. Therefore, we affirm the court's order.

Affirmed.

---

[28] *Id.*

[29] *Id.*